[L. A. No. 925.    Department Two.—January 23, 1902.]

EZRA T. STIMSON, Appellant, v. ALESSANDRO IRRIGATION DISTRICT, Respondent.

IRRIGATION DISTRICT—POWERS OF BOARD—PURPOSE OF WRIGHT ACT—ACQUISITION AND CONTROL OF WATER SYSTEMS.—The board of directors of an irrigation district has only such powers as are expressly given or implied as necessary to carry out the main purpose of the Wright Act (Stats. 1887, p. 29), which is to enable the district to construct, or acquire by purchase or by condemnation, or by a combination of these methods when necessary, a system of canals and water-works, which shall be the property of the district and under its control.

ID.—VOID CONTRACT WITH WATER COMPANY—PURCHASE OF WATER CERTIFICATES—EXECUTORY PROMISE TO LEASE WATER—VOID BOND.—The board of directors of an irrigation district has no power to make a contract with a water company, whereby it issues all of its bonds in consideration of the purchase of water certificates from a water company which has no water plant within the district, and which merely makes an executory promise in the future to lease water to the amount specified in the certificates to the district, at a fixed rental, which promise was never complied with. Such contract is void, and the bonds issued thereunder to persons having knowledge of the facts are void.

ID.—VOID CONFIRMATION OF BONDS—JURISDICTION OF COURT.—The court has only such jurisdiction to confirm bonds issued by an irrigation district as is conferred upon it by the terms of the "Confirmation Act" (Stats. 1889, p. 212), and the confirmation of void bonds not authorized nor "sold" under the terms of the Wright Act, and not within the "Confirmation Act," is void for want of jurisdiction of the subject-matter.

ID.—CONSTRUCTION OF "CONFIRMATORY ACT" AND WRIGHT ACT.—"The Confirmatory Act" confers jurisdiction upon the court only when the bonds of the district are sold under section 16 of the Wright

Act to raise money for investment in a water system, and does not refer to section 12 of the Wright Act, providing for the issue of bonds for the purchase of property authorized to be purchased.

APPEAL from a judgment of the Superior Court of Riverside County. J. S. Noyes, Judge.

The facts are stated in the opinion of the court.

C. C. Bennett, and Frank W. Burnett, for Appellant.

Otis & Gregg, George J. Denis, and Charles Wellborn, for Respondent.

McFARLAND, J.—This action is for the amount of interest coupons which were attached to certain alleged bonds of the defendant, an irrigation district organized under an act of the legislature, approved March 7, 1887, and generally known as the "Wright Act." (Stats. 1887, p. 29.) The court below gave judgment for defendant upon the ground that the issuance, disposition, and delivery of said bonds were without any legal authority, and that, therefore, the bonds are void. Plaintiff appeals from the judgment.

The material facts in the case, found by the court on sufficient evidence, or admitted, are these: After the organization of the respondent and the election of its board of directors, the latter took no steps towards constructing or acquiring any canals or water-works, and made no estimate of the cost thereof, until January 27, 1891. At that time there was in existence a private corporation called the Bear Valley Irrigation Company, which owned some water and ditches quite a distance away from the territory of the respondent, and was engaged in furnishing water to various parties; and on said January 27th the Bear Valley Irrigation Company made a proposition to the directors of respondent that, in exchange for bonds of respondent in the amount of $765,000, it would furnish respondent "51,000 [so-called] acre water-right certificates" of the Bear Valley Irrigation Company. The board voted that said proposition be "accepted for consideration as a basis on which to make said estimates." Then, on February 3, 1891, the board passed a resolution that, "for the purpose of constructing necessary irrigating canal and works," etc., the directors "do

hereby estimate and determine that the amount of money necessary to be raised therefor to be the sum of $765,000.'' An election was called for May 7th, at which the electors of the district should determine whether or not bonds in the amount of $765,000 should be issued, and the result was in favor of the bonds. Thereafter, on May 6, 1891, the directors voted that a contract be made with the Bear Valley Irrigation Company in accordance with the proposal above mentioned; and on said day a written contract was executed between said parties, by which the directors were to deliver to the Bear Valley Irrigation Company the whole of the bonds, and the latter was to deliver to the directors the 51,000 acre water certificates. The bonds to the amount of the entire sum of $765,000 were written and signed, and in a few days afterward they were all delivered to the Bear Valley Irrigation Company, who at the same time delivered the water certificates to the directors. Each of these water certificates stated on its face that there was to be paid by the holder $1.39 on the first days of April and October of each year; that it was subject to certain prior contracts to furnish water with several named persons and companies; that the Bear Valley Irrigation Company guaranteed each certificate to entitle the holder "to receive one acre-foot of water per year [a water-foot being 43,500 cubic feet of water] to be supplied from ——, and from no other source whatever"; that "the water called for by the certificates shall not become appurtenant to the land upon which the same may be used, but the certificates shall always be personal property," and transferable only by surrender to the company and the issuance of new certificates. It also contained an agreement by the holder that on each certificate "there shall be paid $1.39 on the first day of April, and $1.39 on the first day of October of each year," and that "if not paid within sixty days after the same becomes due this certificate shall become null and void at the election of this company." There is a further statement that, "by the receipt of this certificate, the holder thereof assents to and agrees to all the above stipulations." At the time of the execution of this contract of May 6th, the Bear Valley Irrigation Company did not have any ditch or pipe or conduit of any kind by which it could carry any water to the Alessandro District; the contract was wholly executory, and, at the request of said Bear Valley Irrigation Company, the bonds were

delivered to it for the purpose of enabling it to raise money thereon to meet its liabilities and aid in complying with the said contract.

It may be stated—although it is perhaps not material—that while the 51,000 certificates purported to be good for 6,345 inches of water continuous flow under a four-inch pressure, the Bear Valley Irrigation Company was never able to deliver to the district more than one-ninth of that amount of water, and that from all its sources of water combined it could not have furnished the amount of water called for by said 51,000 certificates, ''or any considerable part or portion thereof.'' Afterwards it laid a pipe by which for a year or two it carried and delivered some water to the district; but it never delivered to the district, or to the people thereof, more than seven hundred inches. Within a couple of years it became—and probably at the time of the contract was—insolvent, and its property and business went into the hands of a receiver, who repudiated the said certificates and charged his own prices for what water he delivered.

It is apparent, therefore, that the respondent, in return for its bonds, never got any part of any canal, canals, or water-works, or any real property, or any tangible property whatever; it received merely a personal promise of the Bear Valley Irrigation Company to allow it to rent certain water. The company remained the owner of the pipe-line which it laid, and the respondent did not have any control or ownership of any property whatever, and by the terms of the contract was not to have any such ownership or control.

An irrigation district is a public body, and under the Wright law has only such powers as are given to it by that act. Such powers are enumerated in the act. By section 12 thereof the board of directors is authorized ''to enter upon any land in the district to make surveys, and may locate the line for any canal or canals,'' etc. It is also given the right by said section 12 ''to acquire, either by purchase or condemnation, all lands and waters and other property necessary for the construction, use, supply, maintenance, repair, and improvements of *said canal or canals and works.*'' It is further provided in said section that *''in case of purchase,* the bonds of the district, hereinafter provided for, may be used at their par value in payment.'' The section further gives the right of condemna-

tion when necessary to be used, and contains further provision about the construction of "necessary dams, reservoirs, and works." By section 13 it is provided that "the legal title to all property acquired under the provisions of this act shall immediately and by operation of law vest in such irrigation district," and that "said board is hereby authorized and empowered to hold, use, acquire, manage, occupy, and possess said property as herein provided." Section 15 provides that "for the purpose of constructing necessary irrigation canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act," the board must "estimate and determine the amount of money necessary to be raised," and may then call an election at which the electors of the district shall determine whether or not bonds to that amount shall be issued. If the election shall have been in favor of the bonds, section 16 provides that the board may sell said bonds from time to time, in such quantities as may be necessary and most advantageous "to raise money for the construction of said canal and works, the acquisition of said property and rights, and otherwise to fully carry out the objects and purposes of this act"; and the manner of selling the bonds—that is, by advertising for sealed proposals—is prescribed. Section 35 provides that "after adopting a plan of said canal or canals, storage reservoirs, and works, the board of directors shall give notice by publication," as described, "for bids for the construction of said works or any part thereof," and that the work shall be done under the direction and to the satisfaction of the engineer, and to be approved by the board.

From the foregoing it is quite apparent that the purpose of the Wright Act is to enable an irrigation district to construct or acquire by purchase or condemnation, or by all of said methods combined, when necessary, a system of canals and waterworks which shall be the property of the district and under its control; that the board of directors have power to acquire such water-works in the manner aforesaid, and to issue the bonds of the district in payment therefor, and that the board has no other powers, except those which are expressly given or are implied as necessary to carry out the main purpose of the act. And it is clear that where, as in the case at bar, a board has taken no steps whatever towards complying with the statute, by constructing or acquiring, or commencing or undertaking

to construct or acquire, any system of canals or water-works whatever, it has no power to give all the bonds of the district for a mere personal promise of another that he will in the future lease some water to the district at a stipulated rent. We agree with the conclusion of the learned judge of the court below, that the bonds to which the coupons sued on were attached are void.

It is not necessary to consider how far the position of a *bona fide* purchaser without notice of the liabilities of a public corporation is protected, or to what extent such a purchaser is charged with knowledge of the powers of such a body. The court found, upon sufficient evidence to support the finding, that the assignors of plaintiff, who was an assignee merely for the purpose of bringing the action, took the bonds with notice of the facts hereinbefore stated.

It is contended by appellant that he is protected by a certain judgment of a superior court rendered under the provisions of an act of the legislature approved March 16, 1889, (Stats. 1889, p. 212,) generally called the "Confirmatory Act"; but the contention cannot be maintained. Waiving the point made by respondent, that the court had no jurisdiction in that case, for want of the constructive service of notice prescribed in the act, and assuming that the judgment of the court under the Confirmatory Act is final as to all matters properly before it, the court in that case had no jurisdiction over the subject-matter involved in the case at bar. The court had only such jurisdiction as was given it by the act. But that act contemplates a confirmatory judgment only in case of a "sale" of the bonds of the district. By section 1 it is provided that the board of directors may commence a "special proceeding" by which the proceedings of the board "providing for and authorizing the issue and sale of the bonds of said district" may be judicially examined and confirmed. By section 2 it is provided that the petition of the board shall set forth all proceedings had "for the issue and sale" of the bonds; and by section 5 it is provided that the court "shall have power and jurisdiction" to examine into and approve all proceedings for the organization of the district, and all proceedings which may affect the legality of the bonds, "and the order of sale, and the sale thereof." It evidently refers to the provisions of the original

act for the sale of bonds, which are to be found in section 16 of that act. It has no reference to the provisions of section 12, hereinbefore quoted, that in case of purchase of any property authorized to be purchased, bonds may be used at their par value in payment. But in the case at bar the issuance and delivery of the bonds to the Bear Valley Irrigation Company are not within the provisions of either section 12 or section 16; and no jurisdiction to confirm those acts was given to the court by the statute invoked.

The judgment is affirmed.

Temple, J., and Henshaw, J., concurred.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a hearing in bank and filed the following opinion thereon on the 24th of February, 1902:—

BEATTY, C. J.—I dissent from the order denying a rehearing—not because I think the judgment of the superior court should be reversed, but because the particular ground upon which it has been affirmed is, in my opinion, untenable.

One of the propositions contended for by appellant is, that notwithstanding the illegality of the transaction by which the bonds of the irrigation district were issued to the Bear Valley Irrigation Company, they, being negotiable instruments, became valid and binding as soon as they passed into the hands of *bona fide* purchasers, such as he claims his assignors to have been. The question of law involved in this proposition is left undecided in the opinion of the court, and the whole contention disposed of by the declaration that the evidence in the record sustains the finding of the trial judge, to the effect that the assignors of plaintiff—the real plaintiffs—took the bonds from the Bear Valley Irrigation Company with notice (meaning actual notice) of the facts affecting their validity. I am satisfied that the judge of the superior court did not intend to find actual notice, because there is no evidence in the record to sustain such a finding, except, possibly, as to one of plaintiff's assignors. And there is not even a claim by counsel for respondent that the evidence supports a finding of actual notice as to the other two purchasers of the bonds. What they rely

upon, and all they rely upon, is constructive or imputed notice, and this presents a question which has been left undecided, although it is manifestly by far the most important question in the case.

I concur in the conclusion that the irrigation district is not bound by the decree of confirmation, and this upon the ground that the act of March 16, 1889, supplemental to the Wright Act, was never designed to cover a case in which after the bonds of a district have been exchanged for property, and no possible benefit can accrue to the district from a decree of confirmation, it is sought solely in the interest of the holders of the bonds to estop the district by a proceeding which will not estop them.

I am also of opinion that the legislature in enacting the supplemental act above cited not only intended to provide a means of establishing the regularity and validity of the issue of this particular class of bonds, in order to make them marketable, but also intended that in the absence of a resort to that particular method of establishing their validity, they should remain subject, in the hands of any holder, to all defenses to which they would be subject in a suit by the original purchaser.

Upon these grounds I should have concurred in the judgment of affirmance.