[L. A. No. 2032.    In Bank.—August 28, 1908.]

F. J. FOGG, Appellant, v. PERRIS IRRIGATION DIS-
TRICT, Respondent; J. C. HUTCHINGS, Intervener and
Respondent.

THE PEOPLE OF THE STATE OF CALIFORNIA, Appel-
lant, v. PERRIS IRRIGATION DISTRICT, Respondent;
J. C. HUTCHINGS, Intervener and Respondent.

IRRIGATION DISTRICT—PETITION AND NOTICE OF ORGANIZATION MAY BE IN
ONE DOCUMENT.—In proceedings for the organization of an irriga-
tion district under the so-called Wright Act (Stats. 1887, p. 29),
it is not essential to the jurisdiction of the board of supervisors
that the petition for the organization of the district and the notice
of the time when the petition would be presented to the board
should be contained in separate documents.  A single document,
which is sufficient in form both as a notice and a petition, after
being published for the requisite time as a notice, may be presented
to the board as a petition.

ID.—FRAUD IN ORGANIZATION—PETITIONERS NOT BONA FIDE FREEHOLDERS
—DECREE OF CONFIRMATION—COLLATERAL ATTACK—JURISDICTION.—
The fact that a majority of the persons who signed the petition
for the organization of an irrigation district were not *bona fide* free-
holders in the district, but were made such temporarily and for the
sole purpose of permitting them to sign the petition, is such a
fraud that if shown to the court on a proceeding for confirmation
had under the act of 1889 (Stats. 1889, p. 211), it would be suffi-
cient cause for declaring the organization of the district invalid.
Such fraud, not appearing on the record of the proceedings, would
not make the organization of the district absolutely void, but only
voidable, and it would not deprive the court in the confirmatory
proceeding of jurisdiction to make a confirmatory decree, nor would
it be sufficient, in a subsequent action, to warrant the annulment of
such confirmatory decree.

ID.—NOTICE OF CONFIRMATION—DESCRIPTION OF LANDS AFFECTED.—A
notice of the hearing of the petition for the confirmation of the
proceedings of an irrigation district, which otherwise conforms to
the requirements of the act of 1889, need not contain a specific
description of the real estate of the district, or that of any land-
owner thereof, nor of its boundaries.  Upon its organization the
district became *prima facie* a *quasi* municipal corporation, with
defined boundaries established and recorded, and this record con-
stituted constructive notice of the location of the boundary lines
of the district to all of its inhabitants and to the world.  A state-
ment in such notice that the petition was for the purpose of con-
CLIV Cal.—14

firming the proceedings for the sale of the bonds of a designated irrigation district was sufficient due process of law to inform any owner of lands within the district that his lands would be affected, and that he was interested.

Id.—Change of Boundaries of District.—If after the original organization of the district its boundaries were changed, by proceedings that were valid and regular on their face, such changes were matters of record, and a subsequent notice of the hearing of the confirmatory petition, that referred to the district by its designated name, would be sufficient.

Id.—Subsequent Decree Confirming Organization and Approving Bonds.—Notwithstanding a decree, made in pursuance of the act of 1889, confirming the proceedings of an irrigation district up to an order for the sale of certain bonds may be invalid, a subsequent valid decree, made in pursuance of said act, confirming the original proceedings for the formation of the district, and subsequent proceedings changing its boundaries, and approving bond sales made after the first decree, will protect the district and the bondholders against any attack upon the validity of the district organization or the issuance of the bonds, and will render harmless any error of the trial court in holding the first decree valid.

Id.—Decree of Confirmation—Adjudication of Validity of Organization.—Under the act of 1889, a proceeding to confirm the issuance of bonds by an irrigation district, based upon a petition and notice as required by the statute, necessarily involved and required an inquiry into the validity of the original organization of the district, and the confirmatory decree might adjudge the validity of the organization of the district without any special prayer in that behalf.

Findings — Conflicting Evidence.— A finding based upon conflicting evidence is conclusive upon the appellate court.

Id.—Immaterial Omission to Find.—Where the findings sustain the judgment, the failure of the court to find on other issues becomes immaterial, if a finding thereon in favor of the appellant could not have changed the judgment.

APPEALS from judgments of the Superior Court of San Diego County and from orders refusing new trials. E. S. Torrance, Judge.

The facts are stated in the opinion of the court.

U. S. Webb, Attorney-General, and Works, Lee & Works, for Appellant.

John F. Crowe, for Defendant and Respondent.

William M. Hiatt, and Oscar C. Mueller, for Intervener and Respondent.

SHAW, J.—The above-entitled cases were before this court on former appeals from judgments in favor of the defendant and intervener in each case, given upon sustaining a demurrer to the complaint. Those judgments were reversed. (*People v. Perris Irr. Dist.*, 142 Cal. 601, [76 Pac. 381]; *Fogg v. Perris Irr. Dist.*, 142 Cal. 18, [76 Pac. 1127].)

Upon the going down of the *remittitur* the defendant and the intervener, respectively, filed answers in each case, the two cases were tried and submitted on the same evidence, findings and judgment in each case were made and given for the defendant and intervener, and motions of the respective plaintiffs for a new trial were denied. Appeals were then taken to this court in each case from the judgment and from the order. By stipulation all these appeals have been presented and are to be decided upon the record in the case of *Fogg v. Perris Irrigation District,* and we will in this opinion refer solely to that case.

The object of the action, as shown in the complaint, is to set aside two decrees of the superior court of San Diego County approving, confirming, and declaring valid the proceedings for the formation and organization of the Perris Irrigation District, under the act commonly known as the "Wright Act" (Stats. 1887, p. 29). The first decree was made on December 13, 1890, and it confirms the proceedings up to the order for the sale of certain bonds. The second was made on December 8, 1892, and it purports to confirm, not only the original proceedings for the formation of the district, but also subsequent proceedings eliminating and adding certain territory, and to approve bond sales made after the first decree. Both decrees appear to have been made in pursuance of the act of 1889 (Stats. 1889. p. 212). The attacks upon these decrees are based in part on the ground that the court did not possess or acquire jurisdiction to try the actions and give the judgments. As to the second decree it is also claimed that it was obtained by fraud.

Upon the question of jurisdiction to pronounce the decrees, the first contention of the appellant is that the proceedings for the organization of the district were absolutely void in the ex-

treme sense, that they were of no effect whatever, hence, that there was at the time no such district in existence, no subject-matter upon which the court could act in confirmation proceedings, and, therefore, that there could be no jurisdiction or power to confirm the proceedings or declare the validity of a district which had no legal existence. It is argued that if the court had power, in confirmation proceedings under the act of 1889, to make a lawfully organized district out of a wholly void previous attempt to form such a district, it would, in effect, be creating a district by a mere decree of confirmation, a thing which the act of 1889 does not contemplate or authorize; that the purpose of that act was merely to confirm proceedings and cure irregularities, errors, and omissions in the record thereof, but that, if the original proceeding was void for lack of jurisdiction in the board of supervisors, it is beyond the power of cure by means of a judgment confirming and declaring it valid. So far as this argument applies to a lack of jurisdiction of the original proceeding which appears upon the face of the record thereof, we can perceive no good answer to the argument. Respondent makes no attempt to answer it. Without deciding whether it is sound or not, we will for the purposes of the case assume the contention to be thus far correct.

We are of the opinion that the record of the original proceeding does not, on its face, disclose a want of jurisdiction. The only defect claimed rests upon the assertion that no petition for the organization of the district was ever presented to the board of supervisors, and that no notice of the time when a petition would be presented was ever given. The truth of this assertion depends upon the force and effect of the papers that were presented to the board. It appears that the petition and notice for the organization of the district were both contained in a single document. This document began as follows:—

"Notice is hereby given that the following petition for the organization of an irrigation district in the counties of San Bernardino and San Diego, to be known as the Perris Irrigation District, will be presented to the board of supervisors of San Bernardino County, state of California, at the court house in the city of San Bernardino, at a regular meeting of said board on the 7th day of April, 1890, at 10 o'clock A. M.

"PETITION FOR PERRIS IRRIGATION DISTRICT."

Then follows a petition, in regular form, for the organization of the proposed district, at the end whereof is subscribed the genuine signatures of fifty-five persons who, in the petition, declare that they are freeholders owning lands in the district. A copy of this entire document was published, as the law requires, in a newspaper of the county for two weeks before the time named for its presentation. At the time thus fixed for the presentation, the original document in its entirety was presented to the board as a petition for the organization of the district, and as such it was received and acted on by the board, and the district was formed upon that as a foundation.

The contention is that this document could not legally perform the double office of notice and petition; that it was either the one or the other, but could not be both. It is urged that to constitute a valid notice and petition there must be two documents, one constituting the notice and the other the petition, and each signed by the petitioners. The argument is that as this document begins as a notice it cannot be construed to be anything else, and that, as it has been held that the notice published must bear upon its face the signatures of the petitioners, or show that it was issued by them or given under their authority (*In re Central Irr. Dist.*, 117 Cal. 392, [49 Pac. 354]), it can constitute nothing but a notice, and that, having served that purpose, it could not afterwards be used as a petition. This argument appears to us to have little force. We can see no legal objection to this method of embodying the notice and petition in one document and using it for each purpose successively. The only notice required is a notice to be published in a newspaper. Necessarily this publication must consist of numerous printed copies, not of the one original. There is nothing in the statutes forbidding such a combination of uses, or prescribing any particular form, either for the petition or for the notice. The document was sufficient in form to answer both purposes. Its contents sufficiently show that the parties who signed it intended that it should be so used. After copies of it were published as a notice, there could be no substantial objection to the presentation of the original to the board as a petition.

The other objection to the jurisdiction of the board did not appear upon the record. It was alleged on the one hand and denied on the other that forty-two of the persons who signed the petition were not *bona fide* freeholders, but were made freeholders, temporarily and nominally only, by a conveyance to them of undivided interests in two or three five-acre tracts of land in the district, upon the agreement that they were to take the deeds, sign, and present the petition and reconvey to the grantor after the organization was effected, and that the other freeholders who signed the petition did not constitute a majority of the freeholders in the district. The court made no finding upon this issue. We must, therefore, consider its materiality, if true. We do not doubt that this was a fraud on the board, if concealed from it, as is alleged, or that it would be a fraud upon the law and upon the property-owners of the district, even if disclosed to the board, and that, when shown to the court on a proceeding for confirmation, it would be sufficient cause for declaring the organization of the district invalid. It did not, however, make the organization of the district absolutely void, but only voidable. Persons dealing with the district after the organization was completed and perfected upon the face of the record, would not be presumed to know of this fraud, and, if ignorant thereof, would be protected against it. The purpose of the act of 1889, in providing for an adjudication as to the validity of the district, was to furnish a barrier against subsequent attacks upon the ground of such frauds in the organization of the district, and thereby to protect its bondholders. It could not have been contemplated or intended that the existence of such fraud would always be open to inquiry, notwithstanding such adjudication, nor that if subsequently shown it would prove that the court in the confirmation proceedings had no jurisdiction to act at all, and that its decree was void. We think, therefore, that upon the face of the record jurisdiction of the original proceeding was shown to exist, and that the fraud alleged, although sufficient to have made the organization invalid if shown upon the hearing of the proceedings for confirmation, was not sufficient to deprive the court in that proceeding of jurisdiction to make the adjudication which is here sought to be vacated.

It is further contended that both of the decrees of confirmation were void because no notices of the hearing thereof were given.  The record in each case shows that the notices were duly published for the prescribed time.  It is claimed that they were each void for the reason that they did not contain any description of the real estate of the district, or that of any owner thereof, nor in any manner indicate its boundaries, so that a landowner therein would be warned thereby that his land would be affected or encumbered as a result of the decree sought.  The statute requires that "the notice shall state the time and place fixed for the hearing of the petition, and the prayer of the petition, and that any person interested in the organization of said district, or in the proceedings for the issue or sale of said bonds, may, on or before the date fixed for the hearing of said petition, demur to or answer said petition.  The petition may be referred to and described in said notice as the petition of the board of directors of ............ Irrigation District (giving its name), praying that the proceedings for the issue and sale of the bonds of said district may be examined, approved and confirmed by said court."  The notices fully complied with these provisions.  Appellant claims that this is not sufficient, that there must be some description of the land that would give notice to the owner that his land was involved, that otherwise the act would be unconstitutional in that it would allow a person to be deprived of his property without due process of law.  Conceding that the latter proposition is the law, for the purposes of this discussion, we think the notices given were sufficient.  Each notice stated that the board of directors of the Perris Irrigation District had filed a petition praying that the proceedings theretofore had for the issue and sale of bonds of said Perris Irrigation District be examined, approved, and confirmed, and that any person "interested in the organization of said district, or in proceedings for the issue and sale of said bonds," might appear and answer or demur to the petition.  The law requires that the board of supervisors of the county in organizing an irrigation district shall by minute order, "declare such territory duly organized as an irrigation district," and shall "cause a copy of such order, duly certified, to be immediately filed for record" in the county recorder's office of each county in which its lands lie, and that from the

date of such filing the organization of the district shall be complete. (Stats. 1887, p. 30, sec. 3.) The proceedings for the organization of the district, as we have seen, were regular on the face of the record. The district thereby became *prima facie* a *quasi* municipal corporation, with defined boundaries established and recorded, and this record constituted constructive notice of the location of the boundary lines to all the inhabitants of the district and to the world. The existence of the Perris Irrigation District and the location of its boundaries being matters of record, the statement in the notice that the petition was for the purpose of confirming the proceedings. for the sale of the bonds of the Perris Irrigation District was sufficient to inform any owner of lands situated in the district that his lands would be affected and that he was interested in the matter to be adjudicated. It was equivalent to a declaration that the lands in the Perris Irrigation District would be affected and any landowner could, by reference to the official records of his county, ascertain whether or not his land was included therein. The name of the district, it having by that name a *prima facie* legal existence as such, evidenced in the manner prescribed by law by the necessary official record of the proceedings and order upon which it was declared organized, was a sufficient identification of its boundaries. It constituted a *prima facie* political subdivision of the state for the purposes of an irrigation district, and all persons were required to take notice of the facts shown in the record of its organization.

It is suggested that after the original organization of the district certain changes had been made in its boundaries, and that this rendered the mere name of the district insufficient as an identification. These changes would not make the boundaries of the district, as changed, less definite and certain than before. If the proceedings to change the boundaries were regular and valid on their face, they were matters of record, and the exact extent of the changed boundaries could easily be ascertained by an examination thereof. It is not claimed that they were not regular on the face of the record; hence the description in the notice was sufficient. The argument that: the changes in the boundaries were void because the original organization was tainted by concealed fraud is answered by the same considerations upon which we reached our foregoing

conclusion that such concealed fraud does not destroy the *prima facie* legal existence of the district.

We have reached the conclusion, as will hereafter be seen, that the second decree, that of December 8, 1892, is valid, and that it conclusively adjudicates and establishes the validity of the proceedings to organize the Perris Irrigation District and to issue and sell the bonds thereof, as well as its legal existence as an irrigation district under the "Wright Act," at least so far as is necessary for the protection of the bondholders. (See *People* v. *Linda Vista I. D.,* 128 Cal. 480, [61 Pac. 86].) This conclusion makes it unnecessary to consider alleged errors of the court relating solely to the first decree of confirmation. If we concede that decree to be void, the second decree, if valid, will protect the district and the bondholders against any attack by the plaintiff upon the validity of the district organization or the issuance of the bonds, as effectively as would the first decree, and will render harmless any error of the court below in holding the first decree valid. No judgment or order can be reversed for error unless, by reason of the error, the appellant has suffered substantial injury. (Code Civ. Proc., sec. 475.) We will proceed to consider the objections to the validity of the second decree.

It is suggested that the petition and notice upon which the second decree was made asks for the confirmation of the proceedings to issue and sell the bonds, and for nothing else, and hence that, so far as that decree purports to confirm and validate the proceedings to organize the district, it went entirely beyond the issues and the matter before the court and was consequently void. The statute and the record in the case do not sustain this contention.

The statute (Stats. 1889, p. 212) provides that the board of directors of the district may commence a "special proceeding in and by which the proceedings of said board and of said district, providing for and authorizing the issue and sale of the bonds of said district" may be judicially approved and confirmed. (Sec. 1.) Section 2 provides that the prayer of the petition, in effect, shall be "that the proceedings aforesaid may be examined, approved, and confirmed by the court." We have heretofore stated the provisions regarding the contents of the notice. The notice is not required to state that the legal existence of the district, or the validity of the organ-

ization proceedings, is to be determined. The petition is required "to state generally that the irrigation district was duly organized," but need state nothing further in the way of detail on that subject. It is plain, nevertheless, that the question of the validity of the proceedings to issue and sell the bonds necessarily involved and required an inquiry into the validity of the original organization of the district. The statute itself recognizes this necessity and provides for it. Section 5 declares that upon the hearing of the petition, framed as aforesaid, "the court shall have power and jurisdiction to examine and determine the legality and validity of, and approve and confirm each and all of the proceedings for the organization of said district . . . and all other proceedings which may affect the legality or validity of said bonds, and the order for the sale, and the sale thereof."

The petition and notice in question conformed in all particulars to the requirements of this statute. It appears that after the first decree numerous sales of bonds had been made. The petition recited these sales at length, and in that respect only it differed from that upon which the first decree was based. The second petition and notice were therefore sufficient, under the statute, to give the court jurisdiction to adjudge the validity and legal existence of the district.

The complaint alleges that the second decree was procured by fraud in this, that the attorney who had been employed by certain persons owning lands in the district to appear and contest the proceeding, was bribed by the directors of the district to absent himself from court at the time of the hearing and to suffer the decree to be entered by default. The record shows that no one appeared at the hearing on behalf of any objector and that no objection was filed. Upon the question of the employment of the attorney to appear for the proposed contestants and his alleged bribery by the directors, the evidence was in direct and substantial conflict, and the finding was against the appellant. Under such conditions the finding cannot be reversed on appeal. It is conclusive upon this court.

The question whether or not the bond sales set forth in the second petition and which the second decree of confirmation expressly purports to confirm, were thereby rendered immune against subsequent attacks based on the ground that they were sold or exchanged in violation of the statute of 1887 as con-

strued in *Hughson* v. *Crane*, 115 Cal. 404, [47 Pac. 120];
*Stimson* v. *Alessandro Irr. Dist.*, 135 Cal. 389, [67 Pac. 496;
*Leeman* v. *Perris Irr. Dist.*, 140 Cal. 540, [74 Pac. 24]; is not
involved in this case and we need not decide it. It may be
observed, however, that the decision in *Stimson* v. *Alessandro.
Irr. Dist.* appears to hold that such a decree does not make
such bonds valid.

The complaint is made that the court failed to find on all
the issues. The findings cover the issues relating to the want
of notice on the hearing of the first petition, and also those in
regard to the alleged fraud in procuring the second decree, the
decision on each issue being against the plaintiff. These facts
so found showed conclusively that the decrees were valid and
that the plaintiff was not entitled to judgment, and rendered
any finding on the other issues immaterial and unnecessary.
We need not here determine whether or not the decrees of con-
firmation, or either of them, were or would be conclusive as to
the due organization of the district in any controversy that
may arise involving the validity of such organization, but not
involving the rights of any bondholder. Even if we should
reach the conclusion that these decrees could be of no force
except to protect bondholders, they could not be set aside on
that ground alone. The force and effect of the decrees, when
such other matters alone may be involved, in any action, is to
be determined when the question arises in such action.

The alleged errors of law in the exclusion of evidence are
not, in our opinion, of sufficient importance to require notice.
It is reasonably certain that the excluded evidence could not
have affected the decision upon any material fact.

The judgments and orders appealed from in each case are
affirmed.

Henshaw, J., Sloss. J., Angellotti, J., and Lorigan, J., con-
curred.