### RIALTO IRR. DIST. v. STOWELL.*

### STOWELL v. RIALTO IRR. DIST.

(Circuit Court of Appeals, Ninth Circuit. October 15, 1917.)

No. 2491.

1. COURTS ⚖═366(7)—PRECEDENTS—FEDERAL COURTS.

A decision of a state court determining the character of bonds issued under a state statute is conclusive and binding on federal courts.

2. WATERS AND WATER COURSES ⚖═230(4)—IRRIGATION DISTRICT—BONDS— VALIDITY.

Act Cal. March 7, 1887 (St. 1887, p. 29), under which an irrigation district was incorporated, declares, in section 12, that the directors shall have power to acquire by purchase or condemnation all lands and waters and other property necessary for the irrigation project, and that, in case of purchase, the bonds of the district may be used at their par value in payment. Section 15 declares that for the purpose of constructing necessary irrigation canals and works, etc., the directors shall estimate the amount necessary to be raised and shall immediately call a special election submitting to electors of the district the question whether bonds shall be issued, and that such bonds, if issued, shall be negotiable in form signed by the president and secretary, while section 16 provides that the directors sell bonds from time to time in such quantities as may be necessary and most advantageous to raise money for the construction of canals and works, but that no bonds shall be sold for less than 90 per cent. of their face value after publication of notice of sale, etc. Section 42 declares that the directors or other officers of the district shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise in excess of the express provisions of the act, and that any debt incurred in excess of such express provisions shall be void. *Held* that, while the bonds issued by an irrigation district are negotiable, yet those issued in violation of statute are void, and therefore bonds issued in exchange for construction work or in consideration of a contract for such work to be done in the future are void, although bonds issued in payment for water, pipe lines, and other property actually conveyed are valid.

3. LIMITATION OF ACTIONS ⚖═22(5)—RUNNING OF STATUTE—BONDS—COUPONS.

An action on coupons attached to bonds issued by an irrigation district pursuant to such statute is barred by the four-year limitation prescribed by Code Civ. Proc. Cal. § 337, upon actions on contracts, obligations or liabilities founded upon instruments in writing executed within the state, for the bonds being negotiable, and constituting a lien on the property of the district, the bar of such limitation statute cannot be avoided on the

---

⚖═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Rehearing denied November 19, 1917.

theory that the action fell within the exception of section 312, declaring that civil actions without exception can only be commenced within the period prescribed, unless in special cases a different limitation is prescribed by statute; the bonds not being payable only out of a special fund, and a judgment not merely establishing their validity.

4. WATERS AND WATER COURSES ⬅230(6)—JUDGMENT—EXECUTION—RIGHT TO LEVY.

A judgment in an action on bonds issued by defendant irrigation district, reciting that plaintiff have and recover from defendant the sum of $50,577.70, together with costs, is such a judgment as will authorize the issuance of execution to be satisfied out of any property of the district subject to such process.

5. WATERS AND WATER COURSES ⬅230(5)—BONDS—"NEGOTIABLE INSTRUMENTS"—WHAT CONSTITUTE.

Bonds issued by an irrigation district under Act Cal. March 7, 1887, § 15, providing for election for submitting question of bonds, and declaring that such bonds shall be negotiable in form, are "negotiable instruments."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Negotiable Instrument.]

6. WATERS AND WATER COURSES ⬅230(6)—IRRIGATION DISTRICTS—BONDS—LIABILITY FOR PAYMENT.

Bonds issued by an irrigation district pursuant to Act Cal. March 7, 1887, § 15, providing for bond elections, and that the bonds shall be negotiable in form, though reciting that the bonds and interest thereon are to be paid by revenue derived from an annual tax on the real property of the district, having been made a lien on all the property of the district, are not payable only out of the fund derived from such taxation, and, on recovering judgment against the district, the holder of the bonds is not restricted to the special fund.

7. APPEAL AND ERROR ⬅1177(9)—DETERMINATION—REMAND.

In an action on bonds and interest coupons, where the record did not show how much the judgment should be reduced on account of recovery improperly allowed on interest coupons upon which action was barred by limitations, and there was no stipulation as to the matter, the judgment must be reversed and remanded.

In Error and Cross-Error to the District Court of the United States for the Southern Division of the Southern District of California; Olin Wellborn, Judge.

Action by N. W. Stowell against the Rialto Irrigation District, a corporation. There was a judgment denying plaintiff part of the relief sought, and defendant brings error, and plaintiff sues out a cross-writ of error. Reversed and remanded, with directions.

See, also, 246 Fed. 308, —— C. C. A. ——.

The plaintiff in error was incorporated under an act of the state of California commonly called the Wright Act, entitled "An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes," approved March 7, 1887 (Stats. Cal. 1887, 29), to which act there were several amendments, as well as a supplemental one.

After the organization of the district, it issued bonds in the amount of $500,000, bearing date November 17, 1890, all of which were of the same tenor, and one of which is set out in full in the amended complaint filed by the present defendant in error, Stowell, July 5, 1912, his original complaint having been filed June 27, 1908, to recover $30,009 including interest, alleged to be due upon certain coupons annexed to certain of the bonds so issued, alleged to have been acquired and owned by him. By a supplemental complaint

the plaintiff in the action included in his demand certain other similar coupons, increasing his demand in the aggregate to $50,577.70 including interest.

To all of the bonds were attached both interest and installment coupons, and it was upon such coupons that the plaintiff to the action sought to recover.

By its answer the defendant to the action admitted that the bonds were issued by the officers of the district, but alleged that none of them were issued for a valid or lawful consideration, that none of them were dated or made payable as required by the statute, and that all of the acts of the officers of the district in issuing the bonds were unauthorized and void, and that all of the coupons maturing four years or more before the commencement of the action were barred by a certain specified section of the statute of limitations of the state of California.

After trial before the court the latter made a general finding on the issues in favor of the plaintiff and directed judgment in his favor for $50,577.70, which judgment was accordingly entered.

Each party sued out a writ of error—the plaintiff upon the ground that the court erred in refusing to allow him compound interest, which contention, however, he has in this court abandoned, leaving for consideration only the writ of error brought by the defendant to the action.

There are two other similar actions, it appears from the record, numbered 2492 and 2493 (246 Fed. 308) which, by stipulation of the parties and by order of the court, have been submitted upon the record and briefs in the present case, to abide the decision to be rendered herein.

Henry Goodcell, F. A. Leonard, Howard Surr, and Leonard & Surr, all of San Bernardino, Cal., for Rialto Irr. Dist.

J. W. Swanwick, of Los Angeles, Cal., for N. W. Stowell.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). In form the bonds were "promises to pay to the bearer" thereof:

"At the office of the treasurer of said district the sum of ($500.00) five hundred dollars in gold coin of the United States, at the dates and upon installments as follows: At the expiration of eleven years from date five (5) per cent. of said sum; at the expiration of twelve years from date six (6) per cent. of said sum; at the expiration of thirteen years from date seven (7) per cent. of said sum; at the expiration of fourteen years from date eight (8) per cent. of said sum; at the expiration of fifteen years from date nine (9) per cent. of said sum; at the expiration of sixteen years from date ten (10) per cent. of said sum; at the expiration of seventeen years from date eleven (11) per cent. of said sum; at the expiration of eighteen years from date thirteen (13) per cent. of said sum; at the expiration of nineteen years from date fifteen (15) per cent. of said sum; and at the expiration of the twentieth year from date a percentage sufficient to pay off said sum in full. Said installments are to be paid as provided in and only upon the surrender of the respective installment coupons hereto attached. And said district promises to pay interest on said principal" at a prescribed rate and at prescribed times upon the surrender of the respective interest coupons."

Each bond also recited that:

"This bond is one of a series of bonds amounting in the aggregate to five hundred thousand dollars caused to be issued by the board of directors of said Rialto Irrigation District and pursuant to a vote of the electors of said district at an election held for that purpose on the 15th day of November, 1890. The said series of which this bond is one is composed of one thousand bonds each of the denomination of five hundred dollars, and said bonds are issued by authority of, pursuant to, and after a full compliance with all the requirements of the act of the Legislature of the state of California entitled

'An act to provide for the organization and government of irrigation districts, and to provide for the acquisition of water and other property and for the distribution of water thereby for irrigation purposes,' approved March 7, 1887, and the acts amendatory thereof and supplemental thereto. The Rialto Irrigation District is composed of citrus producing lands divided into ten and twenty acre farms, irrigated by one thousand (1000) inches of water measured under a four-inch pressure, piped to each farm lot. All the said bonds and the interest thereon are to be paid by revenue derived from an annual tax upon the real property of the district, which tax is and the said bonds are by said act of the Legislature, made a lien upon all said real property."

The bonds were signed by the corporation by its president and secretary, and its corporate seal was affixed thereto.

Section 12 of the act under which they were issued provides, among other things, that:

The board of directors of the corporation, "and its agents and employés, shall have the right to enter upon any land in the district to make surveys, and may locate the line for any canal or canals, and the necessary branches for the same, on any of said lands which may be deemed best for such location. Said board shall also have the right to acquire, either by purchase or condemnation, all lands and waters, and other property necessary for the construction, use, supply, maintenance, repair, and improvement of said canal or canals and works, including canals and works constructed and being constructed by private owners, lands for reservoirs, for the storage of needful waters, and all necessary appurtenances. In case of purchase, the bonds of the district, hereinafter provided for, may be used at their par value in payment; and in case of condemnation, the board shall proceed, in the name of the district, under the provisions of title seven, of part three, of the Code of Civil Procedure. Said board may also construct the necessary dams, reservoirs, and works for the collection of water for said district, and do any and every lawful act necessary to be done, that sufficient water may be furnished to each landowner in said district for irrigation purposes. The use of all water required for the irrigation of the lands of any district formed under the provisions of this act, together with the rights of way for canals and ditches, sites for reservoirs, and all other property required in fully carrying out the provisions of this act, is hereby declared to be a public use, subject to the regulation and control of the state, in the manner prescribed by law."

Section 15 of the act is as follows:

"For the purpose of constructing necessary irrigation canals and works and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act, the board of directors of any such district must, as soon after such district has been organized as may be practicable, estimate and determine the amount of money necessary to be raised, and shall immediately thereupon call a special election, at which shall be submitted to the electors of such district possessing the qualifications prescribed by this act, the question whether or not the bonds of said district shall be issued in the amount so determined. Notice of such election must be given by posting notices in three public places in each election precinct in said district for at least twenty days, and also by publication of such notice in some newspaper published in the county, where the office of the board of directors of such district is required to be kept, once a week for at least three successive weeks. Such notices must specify the time of holding the election, the amount of bonds proposed to be issued, and said election must be held and the result thereof determined and declared, in all respects as nearly as practicable, in conformity with the provisions of this act governing the election of officers; provided, that no informalities in conducting such an election shall invalidate the same, if the election shall have been otherwise fairly conducted. At such election the ballots shall contain the words, 'Bonds—Yes,' or 'Bonds—No,' or words equivalent thereto. If a majority of the votes cast are 'Bonds—Yes,' the board of directors shall immediately cause bonds in

said amount to be issued; said bonds shall be payable in gold coin of the United States, in installments as follows, to wit: At the expiration of eleven years not less than five per cent. of said bonds; at the expiration of twelve years not less than six per cent.; at the expiration of thirteen years not less than seven per cent.; at the expiration of fourteen years not less than eight per cent.; at the expiration of fifteen years not less than nine per cent.; at the expiration of sixteen years not less than ten per cent.; at the expiration of seventeen years not less than eleven per cent.; at the expiration of eighteen years not less than thirteen per cent.; at the expiration of nineteen years not less than fifteen per cent.; and for the twentieth year a percentage sufficient to pay off said bonds; and shall bear interest at the rate of six per cent. per annum, payable semiannually on the first day of January and July of each year. The principal and interest shall be payable at the office of the treasurer of the district. Said bonds shall be each of the denomination of not less than one hundred dollars, nor more than five hundred dollars, shall be negotiable in form, signed by the president and secretary, and the seal of the board of directors shall be affixed thereto. They shall be numbered consecutively as issued, and bear date at the time of their issue. Coupons for the interest shall be attached to each bond signed by the secretary. Said bonds shall express on their face that they were issued by authority of this act, stating its title and date of approval. The secretary shall keep a record of the bonds sold, their number, the date of sale, the price received, and the name of the purchaser."

By the next section (16), the board of directors was authorized to "sell said bonds from time to time in such quantities as may be necessary and most advantageous to raise money for the construction of said canals and works, the acquisition of said property and rights, and otherwise to fully carry out the objects and purposes of this act," with specific provisions respecting its intention to make such sale and in regard to public notice thereof, and in respect to the making and opening of bids and the making of such sale to the highest responsible bidder, and with the express provision that "said board shall in no event sell any of the said bonds for less than ninety per cent. of the face value thereof."

By section 42 of the act it is expressly declared that:

"The board of directors or other officers of the district shall have no power to incur any debt or liability whatever, either by issuing bonds or otherwise, in excess of the express provisions of this act, and any debt or liability incurred, in excess of such express provisions, shall be and remain absolutely void."

[1] The meaning of the act respecting the character of the bonds, for what they were thereby authorized to be issued and sold, and the meaning of the provision that they shall "bear date at the time of their issue," was involved in cases heretofore decided by the Supreme Court of the state, one of which (155 Cal. 215, 100 Pac. 248) was between the same parties now here. Of course, the decision of that court upon these questions is binding upon us.

[2] In the case of Baxter v. Vineland Irrigation District, 136 Cal. 185, 194, 195, 68 Pac. 601, it was decided, among other things, that such bonds are negotiable instruments, but it was thereby further decided that:

Such a "district has only the powers which are given it by statute; and if in its name bonds are issued which are beyond its power to issue (ultra vires), they are of no more value than is a paper purporting on its face to be a negotiable promissory note of a maker who never signed it, nor authorized any-

one to sign it for him"—citing its previous decision in the case of Stimson v. Alessandro Irr. Dist., 135 Cal. 389, 67 Pac. 496, 1034.

In the subsequent case of Stowell v. Rialto Irr. Dist., 155 Cal. 215, 100 Pac. 248, the same court held that while an irrigation district organized under the act in question has power to issue its bonds at par for the purchase of completed pipe lines, water rights, and sources of supply suitable and necessary for the reception and distribution of the necessary water, upon the delivery of a deed conveying such property to the district, it has no power to exchange bonds for construction work or in consideration of any contract for such work, saying:

"The argument of respondent is that the contract provided an unauthorized and illegal method of issuing bonds of an irrigation district. Under section 16 of the Wright Act, the board is authorized to sell bonds from time to time, to raise money for the construction of canals and works, the acquisition of property and rights, 'and otherwise to fully carry out the purposes of this act.' Such sale must be to the highest responsible bidder, after publication of notice of sale as prescribed in the act, and no bonds are to be sold for less than 90 per cent. of their face value. Section 12 provides that 'said board shall also have the right to acquire, either by purchase or condemnation, all lands and waters, and other property necessary for the construction, use, supply, maintenance, repair, and improvement of said canal or canals and works, including canals and works constructed and being constructed by private owners, lands for reservoirs, for the storage of needful waters, and all necessary appurtenances. In case of purchase the bonds of the district * * * may be used at their par value in payment.' As this court said in Hughson v. Crane, 115 Cal. 404, 412 [47 Pac. 120, 121], 'these are the only provisions in the act for any disposition by the directors of the bonds of the district, and it follows that the only mode in which they can exercise their power of disposing of the bonds, so that they may become valid obligations against the district, is either to exchange them for property at their par value, or to sell them for money in the open market, under the restrictions and limitations given in section 16, at not less than 90 per cent. of their face value. The express provision giving to the board power to exchange them for certain property at their par value excludes the right of the board to exchange them for any other purpose, or to dispose of them in any other manner than by the sale authorized by section 16.' Applying these views to the facts before the court, it was held, in Hughson v. Crane, that the directors had no power to turn bonds over to an agent who was to sell them at not less than 90 per cent. of their face value, nor to deliver bonds to a contractor, in payment for construction work done by him for the district. Similarly, in Stimson v. Alessandro Irrigation District, 135 Cal. 389 [67 Pac. 496, 1034], it was decided that the statute did not authorize the directors of an irrigation district to make a contract with a water company whereby the district issued all of its bonds in consideration of the mere executory promise of the water company that it would in the future lease water to the district at a stipulated rent. In Leeman v. Perris Irrigation District, 140 Cal. 540 [74 Pac. 24], the doctrine of the former cases was reaffirmed. One of the bonds there involved was issued under circumstances similar to those considered in the Stimson Case, and, on the authority of that case, was held to be void in the hands of the original holder. Others had been exchanged by the district for warrants originally issued to pay for construction work. It was held that section 12 of the act did not authorize the directors to part with bonds in this manner. 'The only express authority given to use bonds in payment for any purpose,' says the court, 'is in the case of the purchase of property necessary for the works. * * * There is no express authority anywhere in the act for exchanging bonds for construction work, or for exchanging bonds for warrants issued for construction work. * * *' "

Now looking at the evidence in the present case, it is seen that the defendant in error himself testifies that a large number of the bonds,

on some of the coupons of which the court gave him, in part, the judgment here complained of, were issued to him under and in pursuance of a contract entered into between him and the irrigation district January 2, 1895, which contract, after reciting that the said Stowell had acquired all of the rights of the Semi-Tropic Land & Water Company under a preceding contract that had been made by the Rialto Irrigation District with that company, proceeded to state a new and additional contract between Stowell and the district, in words and figures as follows:

"Said N. W. Stowell agrees to furnish and lay a good and serviceable pipe of cement concrete and to excavate all trenches necessary, and backfill the same, covering the pipe to a depth of eighteen inches, and to furnish all gates and turnouts necessary, all to be of the same general style and quality as the work heretofore done in said district. Said pipe to be made of one part good Portland cement by measure, and four parts of sand and gravel. The following are the estimated quantities and sizes required: 10-inch pipe 27,020 feet, 14-inch pipe 6,800 feet, 20-inch pipe 3,550 feet, 8-inch pipe 7,800 feet, 22-inch pipe 3,838 feet, 30-inch pipe 7,310 feet. Prices agreed upon are as follows: (Here follow prices.) The sizes of the pipe made may be modified as the district engineer may elect, provided the whole cost does not exceed the total cost of the above estimate at prices agreed upon. The district to provide necessary and convenient rights of way for hauling and laying pipe. The Rialto Irrigation District agrees to pay for pipe in bonds of said district at par as follows: Upon each $5,000 worth of pipe when made at yard there shall be paid said Stowell $3,000 in bonds at par. Thirty-five days after the completion of laying of each successive mile of pipe, the balance due upon such mile shall be paid. Upon completion of a well 20 feet in diameter and 30 feet deep, to the satisfaction of the district engineer, there shall be paid to Stowell the sum of $2,500 in bonds. Fifty per cent. in value of the work to be done under this agreement shall be fully performed on or before March 1, 1895. Ninety per cent. in value of the work to be performed on or before June 1, 1895. The whole to be prosecuted diligently to completion. The said Stowell further agrees to furnish and lay 2,240 feet of pressure pipe at the Lord Place for the sum of ($2,475) twenty-four hundred and seventy-five dollars for 22-inch pipe of No. 14 iron; all payable in bonds at par, as work is completed. All earthwork and hauling from Rialto Station to ditch to be done by district. It is understood and agreed that all pipe heretofore furnished or constructed, or to be furnished or constructed for the Rialto Irrigation District or pipe system, and not heretofore deeded to said district, shall remain and be the property of N. W. Stowell until the bonds received, or to be received therefor, shall have been paid, and upon completion of the work herein agreed upon a deed of all the interests of said Stowell and the Stowell Cement Pipe Company to said pipe, and a deed from N. W. Stowell of a right of way for pipe lines, to said district, shall be executed and placed in escrow with W. S. Hooper, cashier, San Bernardino National Bank, until conditions above are fulfilled."

It was under this new and additional agreement between the parties to the present action that the defendant in error received, as has been said, a large number of the bonds in question. Those bonds, according to the decisions of the Supreme Court of the state, above cited, the district was without power to issue, for they were issued, not in consideration of property conveyed to the district, but for construction work to be thereafter performed by Stowell. Not only was the necessary statutory authority lacking in respect of those bonds, but the act creating the district contains in its forty-second section, as has been seen, the express declaration, in effect, that neither the board of directors nor any officers of the district shall have power "to incur any debt or liability whatever, either by issuing bonds or otherwise, in ex-

cess of the express provisions of this act, and any debt or liability incurred, in excess of such express provisions shall be and remain absolutely void."

In view of the statutory provisions that have been mentioned, it is impossible to hold valid the bonds issued to the defendant in error under and in pursuance of the contract of January 2, 1895, that has been set out. Authorities supra. See, also, Marsh v. Fulton County, 10 Wall. 676, 19 L. Ed. 1040; Township of East Oakland v. Skinner, 94 U. S. 255, 24 L. Ed. 125; McClure v. Oxford Twp., 94 U. S. 429, 24 L. Ed. 129; German Savings Bank v. Franklin County, 128 U. S. 526, 9 Sup. Ct. 159, 32 L. Ed. 519; Coffin v. Board of Com'rs of Kearney Co., 57 Fed. 137, 6 C. C. A. 288; Dillon on Municipal Corporations (3d Ed.) §§ 457, 463, 511, 553; 15 Am. & Eng. Encyc. of Law (1st Ed.) 1292.

The other bonds upon which the judgment of the court below was in part based were issued by the irrigation district to the Semi-Tropic Land & Water Company for water, pipe lines, and other property actually conveyed to the district, the issuance of which, under the decisions of the Supreme Court of the state to which reference has been made, was within the statutory power of the district, and reciting upon their face, as they did, a compliance with all of the statutory requirements, and those here involved having been acquired by the defendant in error in good faith and for value, there can be no manner of doubt that they constitute valid obligations of the plaintiff in error.

Respecting the date of such bonds, the construction of the statute by the Supreme Court of the state (Stowell v. Rialto Irrigation Dist., 155 Cal. 215, 222, 223, 100 Pac. 248) is conclusive against the contentions of the plaintiff in error here.

[3-6] The only question remaining for consideration is whether the coupons annexed to and therefore becoming a part of the bonds last referred to were barred by the statute of limitations of California which was set up in bar. That statute reads, in part, as follows:

"Sec. 335. *Periods of Limitation Prescribed.*—The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows: * * *

"Sec. 337. Within four years: (1) An action upon any contract, obligation or liability founded upon an instrument in writing executed within this state; provided, that wherever the time within which any such action must be so commenced would in any case expire by the terms of this section after the first day of June, one thousand nine hundred and six and before the first day of January, one thousand nine hundred and seven, such action may be commenced at any time before the first day of January, one thousand nine hundred and seven, with the same force and effect as if commenced within four years as in this section provided."

Section 312 of the same Code declares:

"Civil actions, without exception, can only be commenced within the periods prescribed in this title, after the cause of action shall have accrued, unless where, in special cases, a different limitation is prescribed by statute."

It is insisted on behalf of the defendant in error that the statute of limitations is inapplicable to the case, and has never commenced to run against any of the coupons here involved for the reasons, as claimed

by counsel, that the bonds are not negotiable instruments; that they are not general obligations of the district, but are payable only out of a nonexisting "particular fund" and "amount in effect, if not in terms, to a promise on the part of the district to pay the principal and interest of the bond at the dates therein mentioned, provided the fund out of which the payment is to be made shall have been collected." And counsel further says:

"The only judgment we can obtain in this action is a judgment establishing the validity and amount of the indebtedness represented by the bonds in suit. It is not a judgment upon which an execution will lie in any general sense, but only a judgment which may be the basis of another proceeding for the purpose of obtaining the money for its satisfaction."

The record, however, shows that the judgment which was in fact obtained and entered in the court below, and that is brought here for review, is very different from that suggested by counsel. After reciting the trial of the case before the court without a jury, the submission of oral and documentary evidence on behalf of the respective parties, and the findings and conclusion of the court, the judgment entered reads:

"Now, therefore, by virtue of the law and by reason of the premises aforesaid, it is considered by the court that N. W. Stowell, plaintiff herein, have and recover of and from the Rialto Irrigation District (the defendant herein, the sum of $50,577.70, together with his, said plaintiff's, costs in this behalf taxed at $————. Judgment entered October 6th, A. D. 1913."

It cannot be doubted, we think, that upon that judgment, if affirmed, the party recovering it will be entitled to execution to be satisfied out of any property owned by the district subject to such process. See Mather v. City and County of San Francisco, 115 Fed. 37, 52 C. C. A. 631; Herring v. Modesto Irr. Dist. (C. C.) 95 Fed. 705, 709; 2 Dillon on Mun. Corp. § 856, where will be found indicated the appropriate further proceedings in the event the judgment debtor has not sufficient property to satisfy the judgment.

That the bonds provided for by the act of the Legislature in question, the issuance of which was thereby authorized, were negotiable instruments has been decided by the Supreme Court of the state, as has been shown. They were required to contain, and did contain, an absolute promise to pay to the bearer of them certain sums of money at certain specified dates, with interest thereon at a certain specified rate, with appropriate interest and installment coupons annexed thereto. Neither on their face nor in the statute authorizing their issue is there any condition attached to their payment, nor, in our opinion, any provision in either from which any such condition can be implied. True, each bond recites that "all the said bonds and the interest thereon are to be paid by revenue derived from an annual tax upon the real property of the district," and that both such tax and the bonds are by the act under which the latter were issued made a lien upon all of the real property of the district; but that is very far from saying that the taxes so to be levied and collected should constitute a particular or special fund out of which only the principal and interest due upon the bonds should be paid.

United States v. County of Clark, 96 U. S. 211, 24 L. Ed. 628, presented a case where a county had subscribed for stock of a railroad corporation, and had issued bonds in payment therefor pursuant to a state statute which authorized a levy of a special tax to pay them, "not to exceed one-twentieth of one per cent. upon the assessed value of taxable property for each year," but contained no provision that only the fund so derived should be applied to their payment. The defense made to the proceeding in the case, which was mandamus, was in effect that the debt authorized by the state statute was one payable from a particular fund. In holding to the contrary, the Supreme Court said:

"There is no provision in the act that the proceeds of the special tax alone shall be applied to the payment of the bonds. None is expressed, and none, we think, can fairly be implied. It is no uncommon thing in legislation to provide a particular fund as additional security for the payment of a debt. It has often been done by the states, and more than once by the federal government. The act of Congress of Feb. 25, 1862 (12 Stat. 346), set apart the coin paid for duties on imported goods as a special fund for the payment of interest on the public debt and for the purchase of one per centum thereof for a sinking fund; yet no one ever thought the obligation to pay the debt is limited by the amount of the duties collected. Limitations upon a special fund provided to aid in the payment of a debt are in no sense restrictions of the liability of the debtor. Why, then, must not the special tax of one-twentieth of one per cent. be regarded as merely an additional provision made for the payment of the new debt authorized, rather than as a denial to the creditors of any resort to the ordinary sources from which payment of county debts is to be made? Why should such a provision be construed as placing the holders of the bonds in a worse situation than that of any other creditors of the county? These bonds are a debt of the county as fully as is any other liability. Had the act which gave power to the county to issue them said nothing of any special tax, there could be no question that the holders of the bonds, like other creditors, would have a resort to the money in the county treasury collected for the discharge of its obligations; for it is by the law made the duty of the county court to order the payment out of the county treasury of any sum of money found by them to be due from the county. It would therefore have been the court's duty to direct its clerk to issue a warrant for payment, as in other cases. And surely it is not to be held, unless such a construction of the statute is absolutely necessary, that, when the Legislature authorized the county to incur the debt, it intended to deny to the creditor the right to look to the treasury of the county for its payment; in other words, that the debt was sanctioned, but that it was stripped of the usual incidents of a debt, and the debtor was relieved from attendant liabilities. And it is not to be inferred, from a provision giving the creditor the benefit of a special fund, that it was intended to place him in a worse position than that he would have occupied had no such provision been made. And that, too, in the absence of any direction that he must look exclusively to that fund. Such is not a reasonable construction of the statute. Such is not a fair implication of its purpose. It accords neither with its letter nor with its spirit. Yet it is for such an implication the defendants contend, and upon it their case wholly rests. The bonds, as we have said, and as is conceded, are an authorized debt of the county. The purpose for which they were authorized is manifest. It was to furnish aid to the construction of a railroad in which the public, and especially the county of Clark, were thought to be interested. The bonds, it is to be presumed, were intended to be for sale in the market; and it was the obvious intent alike of the state, of the railroad company, and of the county that they should bring the highest price possible."

In principle, what is there said is exactly applicable to the facts of the present case. And just as clearly do we regard, as wholly inap-

plicable here, cases founded upon statutes which, while authorizing the issue of bonds by a municipality, negotiable in form, yet provide for the creation of a special fund out of which only shall such bonds be paid.

A statute of the state of Kansas authorized certain cities within the state to pass ordinances imposing taxes for general revenue purposes on all the taxable property within their limits, and to make specified public improvements and to create certain specified assessment districts upon which to levy, in addition to general taxes, special assessments for the payment of such improvements; and it empowered the city to issue, for the cost of the improvements, bonds payable at the expiration of specified terms and to make assessments in each year to pay the principal and interest maturing thereon during the fiscal year, upon the taxable property within the assessment district. Other sections of the act authorized the city to provide, when necessary, for the issue of bonds for the purpose of funding any and all indebtedness of the city and required it to make provision by levying taxes payable in cash for a sinking fund for the redemption at maturity of "the bonded indebtedness of the city" and to levy annually taxes payable in cash on all taxable property within the city, in addition to other taxes, and in amount sufficient to pay the interest and coupons, as they become due, on all the bonds of the city. Under the statute the city passed an ordinance providing for certain street improvements, establishing the special assessment district for the paying of the costs of the work by the issue of special improvement bonds of the city, which bonds should be paid, both principal and interest, solely from special assessments upon property within the assessment district. Each bond issued under the ordinance stated in its margin that it was issued in pursuance of the ordinance of the city, and upon its face recited that it was a special improvement bond of the city. It also declared upon its face that the city, for value received, thereby acknowledged itself to owe and promised to pay to the holder the amount thereof, and each of the bonds was indorsed with the certificate of the auditor of the state that it was regularly and legally issued. A bona fide holder of some of the bonds brought suit against the city and recovered judgment for the amount thereof in the ordinary form, except that the court added that it "be enforced and collected pursuant to law in such case made and provided." The judgment not having been paid, the holder sued out a writ of mandamus to compel the levy of a general tax. The trial court held that the levy must be confined to special assessments upon the property within the street assessment district, but that holding was reversed by the Supreme Court in the case of United States v. Ft. Scott, 99 U. S. 152, 159, 25 L. Ed. 348, where that court said:

"The main difficulty comes from the peculiar phraseology of the city ordinance prescribing the source from which the means for the payment of the bonds should be obtained. The statement in the ordinance that the bonds 'shall be paid, principal and interest, solely from special assessments, to be made upon and collected solely from the lots and pieces of ground fronting upon or extending along the street the distance improved,' should be regarded only as an expression, in emphatic terms, of the purpose and duty of the city, as between all its taxpayers, to impose the cost of the proposed improvements

upon the property specially benefited. There is no reason to presume that the ordinance was intended to mean more than the statute under which it was enacted. The general reference, upon the margin of the bonds, to the ordinance under which the improvement was projected, should not, in view of the general powers of the council, as declared in the statute, be held as qualifying or lessening the unconditional promise of the city, set forth in the body of the bonds, itself to pay the bonds, with their prescribed interest, at maturity. The agreement is that the city shall pay the interest and principal at maturity. There is no reservation, as against the purchasers of the bonds, of a right, under any circumstances, to withhold payment at maturity, or to postpone payment until the city should obtain, by special assessments upon the improved property, the means with which to make payment, or to withhold payment altogether, if the special assessments should prove inadequate for payment. Experience informs us that the city would have met with serious, if not insuperable, obstacles, in its negotiations had the bonds upon their face, in unmistakable terms, declared that the purchaser had no security beyond the assessments upon the particular property improved. If the corporate authorities intended such to be the contract with the holders of the bonds, the same good faith which underlies and pervades the statute of March 2, 1871, required an explicit avowal of such purpose in the bond itself, or, in some other form, by language, brought home to the purchaser, which could neither mislead nor be misunderstood."

Avery v. Job, 25 Or. 512, 36 Pac. 293, presented a case where a municipal charter provided that:

"All moneys collected from water rates shall be kept separate from all other funds, and shall be known as the water fund, and shall only be used to pay the costs incurred by the city in operating such waterworks and extending and improving the same, and to pay the semi-annual interest on the bonds issued under this act, and all the surplus collected from water rates shall go to create a sinking fund with which to pay the principal on such bonds at maturity."

The Supreme Court of Oregon said:

"The argument is that by this provision of the charter the money collected for water rates is made a special fund for the payment of the interest on the bonds as it accrues, and for the creation of a sinking fund for their payment at maturity, and that it is the only fund out of which such bonds or the interest thereon can be paid. As a general rule, when the Legislature authorizes a municipality to contract a debt, and issue bonds therefor, it is to be inferred that it intended to authorize the payment of such bonds out of the money raised by general taxation, unless there is something in the act itself, or some general limitation upon the power of taxation, which repels such an inference; and, although a special tax or fund may be provided, the bondholders' remedy is not limited to such tax or fund, unless it is provided that the bonds shall not be paid in any other way. The bonds, when issued, become a debt of the corporation for which it is primarily liable, and for any balance due thereon after the application of the special fund the holders are entitled to payment out of the general fund of the corporation."

See, also, Vickrey v. City of Sioux City (C. C.) 115 Fed. 437; United States v. Saunders, 124 Fed. 131, 59 C. C. A. 394; Mutual Benefit Ins. Co. v. City of Elizabeth, 42 N. J. Law, 235.

We regard it as clear that the bonds here in question constitute a general obligation of the irrigation district to pay the principal and interest thereof as therein provided for, and that a bona fide holder of such bonds is not limited to any particular fund.

Such being the case, that the statute of limitations of the state runs against the coupons, whether annexed to or detached from the bonds,

and bars them in four years from the time such coupons respectively mature, was distinctly adjudged by this court in the case of Mather v. City and County of San Francisco, supra.

The cases of Lincoln County v. Luning, 133 U. S. 529, 10 Sup. Ct. 363, 33 L. Ed. 766, Freehill v. Chamberlain, 65 Cal. 603, 4 Pac. 646, and Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459, so much relied on by the counsel for the defendant in error, do not, in our opinion, at all support the contentions on the part of the defendant in error.

Some of the coupons involved in Lincoln County v. Luning were barred by the general limitation law of the state. But, said the Supreme Court:

"There has been this special legislation in reference to these coupons. The bonds were issued under the funding act of 1873. In 1877 the county was delinquent in its interest, and the Legislature passed an act amendatory to the act of 1873. This amendatory act provided for the registering of overdue coupons, and imposed upon the treasurer the duty of thereafter paying the coupons as money came into his possession applicable thereto, in the order of their registration. Statutes of Nevada 1877, 46. The coupons, which by the general limitation law would have been barred, were presented, as they fell due, to the treasurer for payment, and payment demanded and refused, because the interest fund was exhausted. Thereupon the treasurer registered them as presented, in accordance with the act of 1877, and from the time of their registration to the commencement of this suit there was no money in the treasury applicable to their payment. This act, providing for registration and for payment in a particular order, was a new provision for the payment of these bonds, which was accepted by the creditor, and created a new right upon which he might rely. It provided, as it were, a special trust fund, to which the coupon holder might, in the order of registration, look for payment, and for payment through which he might safely wait. It amounted to a promise on the part of the county to pay such coupons as were registered, in the order of their registration, as fast as money came into the interest fund; and such promise was by the creditor accepted; and, when payment is provided for out of a particular fund to be created by the act of the debtor, he cannot plead the statute of limitations until he shows that that fund has been provided."

Nothing needs to be added to show the inapplicability of that case to the present one.

The bonds involved in the case of Freehill v. Chamberlain, 65 Cal. 603, 4 Pac. 646, were issued under and by virtue of a statute passed by the Legislature of California April 24, 1858 (Stats. 1858, 280), under which, as expressly stated by the court in its opinion, no action could be maintained against the city of Sacramento (against whose treasurer the mandamus proceeding was had), either on the bonds or coupons; but, according to one of the sections of the statute, 55 per cent. of certain revenues therein specified were set apart and appropriated for the payment of the annual interest on the bonds, and for their final redemption; and the act made it the duty of the treasurer of the city to pay the coupons when due as soon as those moneys came into the treasury. What the court held in that case was that it was not competent for the city to divert those moneys into other channels to the detriment of the bondholders; that:

"By law, it was the duty of the city to make provision for the payment of the bonds and coupons, according to the statute under which they were is-

sued, and, by omitting to perform such duty, the city could not create the defense of the statute of limitations; not until the funds were in the treasury, properly applicable, would the statute begin to run; not until that period would the petitioner have any right of action or proceeding against the treasurer."

The case of Robertson v. Blaine County, 90 Fed. 63, 32 C. C. A. 512, 47 L. R. A. 459, is as little in point. There certain bonds with coupons annexed had been issued by Alturas county, of the state of Idaho, subsequent to which Alturas county was abolished by act of the Legislature of the state, and, together with Logan county, was made to constitute the new county of Blaine, by which latter act Blaine county was made liable for the bonds that had been issued by Alturas county. The action was against Blaine county on the bonds issued by Alturas county, and would have been barred by the statute of limitations of the state but for the liability imposed on Blaine county by the act of the Legislature creating it. As stated by the court, more than five years having elapsed from the issuance of the bonds before the commencement of the action, the statute of limitations would have applied but for the act of the Legislature imposing the obligation upon Blaine county to pay them; the court very properly holding:

"So far as Blaine county is concerned, the bonds are but the evidence of the valid and legal indebtedness of Alturas, which it agreed to pay. The debt was originally to be paid by Alturas county, Blaine county, except for the provisions of the statute referred to, could not be held answerable for the debt; but, by the act, new obligations were created, and the manner of payment was changed. To recapitulate: The statute created a debt, duty, or obligation against Blaine county, to recover a portion of which this action is brought; but, in order to show a cause of action against Blaine county, it devolved upon the plaintiff to allege the issuance of the bonds by Alturas county, and their nonpayment, because the existence of such facts were necessary in order to show that they constituted a part of the valid and legal indebtedness of Alturas county, which Blaine county, by virtue of the provisions of the statute, became liable to pay. This debt, or obligation, or whatever it may be called, is in the nature of a specialty, and, in our opinion, is not barred by the provisions of section 4052 of the Revised Statutes of Idaho."

That case was decided long before our decision in the case of Mather v. City and County of San Francisco, above referred to, and was manifestly not regarded as affecting the correctness of the decision in the latter case.

[7] In the brief of counsel for the plaintiff in error it is said that by a stipulation of counsel it was provided:

"If the statute of limitations is held to be applicable to the case at bar, then, under the stipulation and order of court above referred to, the judgment in case No. 2492 should be reduced by $61,759.85 on account of barred coupons sued upon in that case, and in case No. 2493 the judgment should be reduced by $4,367 on account of barred coupons sued upon in that case."

We find in the record no such stipulation. Nor can we determine from the record with certainty the amount of the coupons involved in the present case that are barred by the statute pleaded in bar.

The judgment is reversed, and the cause remanded to the court below for further proceedings not inconsistent with the views above indicated.