## PARKER v. WEBER COUNTY IRR. DIST.

No. 4432.   Decided September 24, 1926.   Rehearing Denied
November 29, 1926.   (251 P. 11.)

*A. G. Horn,* of Ogden, for appellant.

*Pratt & Pratt,* of Ogden, for respondent.

STRAUP, J.

A. F. Parker, a civil engineer, brought this action to recover from the district on a written contract entered into between him and the district on December 16, 1920. By the terms of the contract he was to make surveys, plans, drawings, and specifications of a proposed system of waterworks for the irrigation of the district and was to have charge of the work and be paid $300 "on the 1st day of every month during the progress of the work." The contract contained a provision that Parker was not to begin the work "nor was the said employment or salary to commence until the board (of the district) shall have served him with written notice to begin said work." It further provided that Parker should not pledge or bind the credit of the district in making any purchase or incurring any expense without express authority from the board, and that the contract was to terminate six months from the date of the service of the notice, but that the district had the right of giving notice to terminate the contract at any time.

On the same day and at the same time the contract was signed, the board served Parker with written notice "to begin the work specified" in the contract, but the district averred and offered to prove that in connection therewith, and at the same time the notice was handed to Parker, the board and its members told him not to begin the work or do anything until the board had obtained a loan from a bank or banks in Ogden City, an application for which was then pending and of which Parker had knowledge, and that it then was agreed between them that he was not to do any work under the contract and that he was not to be paid any salary until the loan was obtained. The court below excluded the offered testimony, but found that Parker had not entered upon the performance of any of his duties and had not performed any of the conditions or terms of the contract, and that no work was done by him under it, and hence rendered judgment in favor of the district. From that judgment Parker appealed, and on the

appeal the district made cross-assignments presenting the rulings excluding its offered testimony. On that appeal this court held that there was some evidence to show that the contract became operative and that Parker had entered upon his employment and that he had rendered some services; that the salary did not depend upon the amount or nature of services rendered by him, but upon his employment in pursuance of the terms of the contract, and "according to the evidence as it now stands the contract was in force for at least some time, if only for a few days"; and that hence Parker "was entitled to a finding respecting the length of time the contract remained in force after the notice which made it operative was served." But this court further held "that the district had set up a complete defense" to plaintiff's cause by alleging that the contract never became effective and that the court erred in excluding the proffered testimony of the district to the effect that the contract was not to become operative until the loan was obtained to defray the expenses of the district, and that "if the defendant should establish its defense and such should be the finding of the court, then it is very clear that the plaintiff cannot recover. If, upon the other hand, the evidence should not be changed to the effect that the contract of employment became effective and the finding of the court is to the same effect, then the plaintiff is entitled to recover some salary, however small." The judgment was thereupon reversed and the cause remanded for a new trial. *Parker v. Weber County Irr. Dist.*, 65 Utah, 354, 236 P. 1105.

On the retrial of the case no additional or further evidence was adduced on behalf of Parker. It, however, was stipulated that the evidence on his behalf on the first trial should be considered as evidence on the second trial. But the district now was permitted to prove what on the first trial was excluded. In such respect it by three witnesses, members of the board, proved that on the day the contract was signed and the notice served on Parker the district had pending an application for a loan the obtaining of which

was uncertain, and that they told Parker that notwithstanding the notice that he was not to proceed with the work or to do anything, to which Parker consented, and that it was thereupon understood and agreed between them that neither the contract nor the notice was to be effective or operative and that Parker was not to be paid any salary until and upon the condition that the loan was obtained; that the loan was not obtained; and that no work was done by Parker under the contract after it was signed. The substance of that testimony is not disputed. The court, however, found the making of the contract on December 16, 1920, the service of the notice on the same day, and that Parker "immediately entered upon the performance of his services as such engineer, and from thence during the period of six months mentioned in said agreement rendered to the defendant such services as such engineer as said defendant through its board required of him," and "that it was not at any time agreed or understood that" Parker "should not perform any service under said contract nor that his salary should not become due or payable thereunder until said defendant could or should succeed in making a loan sufficient in amount to carry on or pay the salary," and that the notice was not delivered upon any such condition, but that the contract became immediately effectual upon its execution and upon the service of the notice, and that the only condition imposed upon Parker was that he was not to pledge or bind the credit of the district in making any purchase or in incurring any expense other than his salary until the loan was obtained, but that no loan was obtained. Consequently the court now rendered judgment in favor of the plaintiff and against the district for the full period of the contract, six months, at the rate of $300 per month, or in a total sum of $2,472, including interest.

Between the first trial and the second, and in October, 1925, the district filed a petition for a dissolution of the district, alleging, among other things, its inability and failure to "function" and that it had not "functioned" at

any time since its organization. Upon the filing of such petition, due notice was given by publication for the presentation of claims. Among the claims presented was the claim of Weber county in the sum of $3,674.84 and the claim of the state in the sum of $2,477.31, and an objection on behalf of Parker to a dissolution until his claim, amounting to over $2,400, was paid. So among the issues tried was not only the pending action of Parker, but by stipulation also the claims of the county and the state. To those claims the district interposed the statute of limitations. The court found the issue in favor of the state and the county and rendered judgment accordingly. From all these judgments the district now prosecutes this appeal.

As to the Parker judgment, it contends that the findings heretofore referred to are against the evidence; as to the judgments in favor of the state and county, that the claims are barred. We think the contentions are well founded.

First, as to the Parker judgment: The point is urged on behalf of Parker that the testimony of the members of the board that the contract was not to become effectual and the salary of Parker not to be paid until the loan was made varied the terms of the contract, and especially of the notice, and thus if not improperly received, the effect to be given it as evidence should be regarded as inconsistent with the terms of the notice. Such was one of the questions involved and decided on the first appeal. The effect of that decision is that such testimony did not go to the contents of the contract or to the notice, and that notwithstanding the notice it was competent to show by parol that neither the contract nor the notice was to become operative until the loan was obtained, and that if the pleaded defense in such respect was established it was a complete defense to Parker's cause. We thus consider the matter from such viewpoint.

The witnesses testified on behalf of the district that when the contract was signed and the notice served, which were on

the same day, it was understood and agreed that the contract was not to become operative nor the notice effectual, nor the salary to begin, until the loan was obtained; that no loan was obtained and that no work was done nor any services rendered by Parker under the contract. The claim is made by respondent that what the witnesses in fact testified to was merely that Parker was not to purchase anything or to incur any expense other than his salary until the loan was obtained. But such is not the case. The witnesses testified that notwithstanding the service of the notice Parker was not to do anything under the contract and that his salary was not to begin and was not to be paid until and upon the condition that the loan was obtained; that it was not certain whether a loan could be had because either an action had been commenced or was threatened challenging the validity of the organization, and because of that and for other reasons the bank or banks to whom the board had applied for a loan hesitated to make it, and that without obtaining a loan the district had no means to go forward with the work or to pay any part of its expenses, and that no surveys or plans or specifications were made by Parker. Nor is there any evidence to show that anything was done by him after the contract was signed, except to meet once or twice with the board and furnishing it a rather cursory estimate of the cost of tents, material for a temporary portable camp for a surveying party, and that he had obtained addresses of some men who might be employed in the service if the project went forward. And it is not seriously contended by the respondent that anything of substance was done or performed by Parker under the contract. The theory mainly urged on his behalf is that when the contract was signed and the notice served the contract immediately became effectual, and that hence Parker was entitled to his salary even though no services were rendered by him, on the theory, not that he had performed his part of the contract, but that he at all times held himself ready and was willing and able to perform it. The finding of the court

that Parker rendered all such services as were required of him under the contract is a mere negative pregnant, implying that services were required of him when in truth and in fact none were required of him and none of any consequence rendered by him in pursuance of the contract. After the commencement of the action and before the first trial, Parker died. The administrator of his estate was thereupon substituted as plaintiff. Because of Parker's death we recognize it was somewhat difficult for the administrator by any direct evidence to meet the testimony of the witnesses on behalf of the district as to the understanding or agreement that notwithstanding the notice Parker was not to go forward with the work or do anything under it until the loan was obtained. However, the circumstances, that no survey was made or started, and no plans, drawings, or specifications made by Parker, that not anything of substance was done by him under the contract, that an application for a loan was pending with the uncertainty as to whether it would be obtained and without it the district was unable to go forward with the work and was without means to defray any of its expenses, all of which Parker well knew, tend to corroborate the testimony of such witnesses and are consistent with it, nor, in view of the circumstances, is the testimony improbable or unreasonable. The witnesses were not impeached nor their testimony in any particular discredited or contradicted or impaired. The court thus was not at liberty to disregard it and make a finding contrary thereto, which in effect was done by finding that there was no such agreement or understanding as testified to by the witnesses. In other words, the district by undisputed evidence proved what this court on the first appeal said was a complete defense to plaintiff's cause, but the court by its finding disregarded such evidence and found contrary thereto; and hence it follows that the finding must be set aside and the judgment based upon it vacated.

Now, as to the claims of the state and the county. The statute (chapter 68, Laws Utah 1919) relating to irriga-

tion districts and to the creation of them, among other things, provides that—

"The cost of the water survey, and all other costs incurred upon petition filed by the Governor shall, if organization of the district be not effected, be borne one-half by the county or counties in which the proposed district is situated, in proportion to the acreage, and one-half by the state of Utah; but in case organization of the district is effected all such costs and expenses, including cost of the water survey, shall be repaid by said district." Section 2.

That the district was created and organized is not disputed. The exact date it was organized is not clearly shown, except that it was created and organized prior to December, 1920. The claim of the state is for salary, expenses, surveys, and plans furnished by the state engineer from November, 1919, to and including April, 1920, amounting to $2,608.46. The claim of the county, amounting to $3,674.84, is for clerical help, engineering expenses, compiling water reports, printing, stationery, and supplies from and including April 26, 1920, to and including December 13, 1920, and one item of stationery and supplies amounting to $20.98 furnished January 21, 1921. The state did not present any claim to the district or otherwise, nor commence any action, until November 27, 1925, when it filed its claim in the district court. The county presented its claim to the district on January 26, 1924, but took no action thereon and did nothing further with it until November 18, 1925, when it also filed its claim in the district court. The claims so filed by the state and county in the district court were in response to the notice to present claims resulting from the filing of the petition by the district October 13, 1925, for a dissolution of the district. The total claims presented and allowed amounted to $27,352, including the claims of Parker, the county, and the state. The district objected to the claims of the state and the county on the ground that they were barred by the statute of limitations. The court held the claims not barred. The contention made by the district is that the claims of the state and county accrued when the dis-

trict was organized, which was some time prior to December, 1920. The district pleaded that those claims were barred by Comp. Laws Utah 1917, § 6467, providing that an action upon a contract, obligation, or liability not founded upon an instrument in writing must be commenced within four years; section 6468, that an action for liability created by statute must be commenced within one year; section 6474, providing that an action not otherwise provided for must be commenced within four years; and section 6475, that the limitations provided by the statute shall apply to actions brought in the name of or for or on behalf of the state in the same manner as to actions by private parties. As is seen, the last item of service rendered or the last item of material furnished or expense incurred by the state on behalf of the district was in April, 1920; and by the county, January 21, 1921. Treating the filing of the claims in the district court in November, 1925, as the commencement of an action, there was no other action, more than four years elapsed from the time the action was commenced and the last service rendered or supplies furnished, and more than four years after the district was organized. If the claims are barred by the four-year period of limitations it is unnecessary to determine whether either of them falls within the one-year period.

The state and county contend: (1) That the claims arose from or through a performance of a governmental duty, and that the debt or obligation is in the nature of a specialty; (2) that the claims were payable out of a special fund which never was created, and that the statute did not begin to run until the fund was created; and (3) that the debt or obligation is in the nature of a tax against which the statute of limitations did not run, and for such reasons, it is contended, the statutes heretofore referred to do not apply. To support the first proposition the case of *City of Chicago v. Dunham Towing & Wrecking Co.*, 246 Ill. 29, 92 N. E. 566, is cited. The case is not pertinent. The pleaded statute was there held applicable and properly interposed. However, in the opinion is found a statement that statutes of limitations

may be interposed to all actions by municipal corporations to enforce mere private rights but not to enforce public rights. But the court held the matter involved there was a private and not a public right. Further, the case deals with an entirely different matter. 1 Wood, Limitations, §§ 36, 39, is also cited, where the author says that—

"In all cases where liability is created by the positive requisitions of a statute and not by the act of the parties themselves, the liability is in the nature of a specialty and is not within the statute of 21 James nor within the statutes adopted in the several states applicable to simple contracts, unless expressly made so."

But the author further says that actions upon any contract or obligation in writing are barred within a stated period, and by a general clause that all actions for relief not otherwise provided for are barred in a stated period, "brings all specialties under the same head." To that effect is our statute, section 6467, requiring all actions upon a contract, obligation, or liability not founded upon an instrument in writing, to be brought within four years, and by section 6474 that an action for relief not otherwise provided for by the statute must be brought within four years after the cause of action shall have accrued. Under similar statutes, the courts of California held that the statute was equally applicable to simple contracts in writing and specialties, and to all cases where either equitable or other relief is sought. *Lord v. Morris,* 18 Cal. 482. And whatever doubt there may be about the matters is set at rest by section 6475, which provides that the limitations prescribed by the statute shall apply to actions brought in the name of or for or on behalf of the state in the same manner as to actions by private parties. Such statute was held by this court not only applicable to an action brought in the name of the state but also when brought in the name of an agency of the state. *Pioneer Investment Co. v. Board,* 35 Utah, 1, 99 P. 150, 136 Am. St. Rep. 1016. It there was held applicable to a board of education. We see no reason why it should not be held applicable

also to a county. The statute of limitations of this and of many other states are essentially different from the statute of 21 James and are so recognized by the author, Wood on Limitations. In referring to such differences he, at section 37, says:

"In California actions upon judgments must be brought within five years, and actions upon any contract or obligation in writing within four years; and by a general clause all actions for relief not otherwise provided for are barred in four years, and this brings all specialties under the same head."

He further says that in Kansas all actions upon specialties are barred in three years; in Nebraska, in four years; in Minnesota, after stating that contracts and other obligations are there barred in six years, and after referring to the bar of actions founded upon other liabilities, he says, "and all matters not otherwise provided for are barred in ten years, which necessarily embraces all specialites not specifically provided for," and refers to statutes of other states to the same effect.

Now, as to the payment of these claims out of a special fund: It may be conceded that where bonds or warrants, or the like, of a state or of a political subdivision thereof, are payable only from certain money or funds in the treasury, the statute of limitations does not run so long as that fund remains unprovided; but that rule does not apply where the obligation is payable unconditionally. In such case the statute of limitations runs from the maturity of the obligation, and if at that time there is no money in the treasury with which to pay the obligation, it is the duty of the holder thereof to reduce his claim to judgment. *Farwell v. San Jacinto, etc., Dist.*, 49 Cal. App. 167, 192 P. 1034; *Rialto Irr. Dist. v. Stowell*, 246 F. 294, 159 C. C. A. 24. In the first case the holder of the bonds issued by the district brought an action to recover about $83,000 principal and interest. The district and landowners interposed the four-year period of limitation. The district had no money

with which to pay the bonds. The act under which the district was organized provided that the bonds were to be paid by revenue to be derived from annual assessments upon the real estate in the district, and which was liable to be assessed therefor. The bonds matured more than five years before the commencement of the action. About the same contention was there made against the plea of the statute as is here made, that such bonds were payable out of a special fund, a revenue to be obtained by assessment, and that no such assessment was made and that there were no funds from which to pay the bonds, and that hence the statute did not begin to run. Said the court:

"Such bonds and coupons are general obligations of the district. They are unconditional promises to pay money and money only. They are made payable to bearer and in gold coin of the United States, as provided in the act, and are payable, not when a fund is provided for their payment, but at a time and place certain, fixed in each instrument. Just because there was no fund in the treasury, or because the directors of the district had failed to provide a fund out of which these general obligations could be paid furnished no sufficient excuse to the holders of such bonds for not converting their claims into judgments against the corporation. The want of funds with which to pay such judgments is a question of execution, and not of indebtedness alone.

"Both our state Supreme Court and the federal courts have decided that the statute of limitations begins to run from the maturity of bonds and coupons such as are involved in this action. *Stowell v. Rialto Irr. Dist.*, 246 F. 294, 159 C. C. A. 24; *California Safe, etc., Co. v. Sierra, etc., Co.*, 158 Cal. 690, 112 P. 274, Ann. Cas. 1912A, 729. And more than four years have run from their maturity before the commencement of this action."

In the case of *Rialto Irr. Dist. v. Stowell,* supra, the action also was one on bonds of an irrigation district. There, too, the plea of the statute of limitations was interposed. There again it was contended that the statute had no application because the bonds were not general obligations but payable only out of a nonexisting "particular fund," the bonds being payable out of revenue to be derived from an annual tax upon the real property in the district and were made

a lien uon such real property. But that, said the court in holding the plea good, "is far from saying that the taxes so to be levied and collected should constitute a particular or special fund out of which only the principal and interest due upon the bonds should be paid." Said the court further:

"It is regarded as clear that the bonds here in question constitute a general obligation of the irrigation district to pay the principal and interest thereof as therein provided for, and that a bona fide holder of such bonds is not limited to any particular fund. Such being the case, that the statute of limitations of the state runs against the coupons, whether annexed to or detached from the bonds, and bars them in four years from the time such coupons respectively mature, was distinctly adjudged by this court in the case of *Mather v. City and County of San Francisco,* supra." 115 F. 37, 52 C. C. A. 631.

If in such cases the obligations sued on were general obligations of the district and not payable out of any particular fund, and the statute of limitations began to run at the maturity of them, for stronger reasons must it be held here that the obligations sued on were general obligations and not payable out of a particular fund and that the statute began to run when the obligations matured. The language of the statute is that all costs incurred if the organization of the district be not effected shall be borne one-half by the county and one-half by the state, "but in case organization of the district is effected all such costs and expenses, including cost of water survey, shall be repaid by said district." By such language we think it necessarily follows that the obligations were general obligations and that they matured as soon as the services were rendered or the material or supplies were furnished to the district and the district was organized; that the cause of action then accrued; and that an action then could have been commenced and maintained by the state and the county to recover the costs and expenses incurred and expended by them.

The contention that the claims are in the nature of a tax is untenable and to that effect is so ruled in the case of *Rialto Irr. Dist. v. Stowell,* supra.

We are of opinion that the actions on behalf of the state and the county are barred. The order therefore is that the judgments of the court below are reversed and set aside and the cause remanded for new trials. Costs to appellant.

THURMAN and CHERRY, JJ., concur.

FRICK, J. I concur in the reversal of the judgment. I am of opinion, however, that in view that the judgment is reversed entirely upon law questions which are controlling against the plaintiff's right to recover, a new trial is wholly unnecessary and therefore the judgment should be that the case be dismissed.

GIDEON, C. J., did not participate in this opinion.