[L. A .No. 2162.]
[Department One.—February 17, 1909.]

## N. W. STOWELL, Appellant, v. RIALTO IRRIGATION DISTRICT, Respondent.

[L. A. No. 2163.]

## N. W. STOWELL, Appellant, v. RIALTO IRRIGATION DISTRICT, Respondent.

IRRIGATION DISTRICT—POWER TO ISSUE BONDS AT PAR—PURCHASE OF COMPLETED PIPE-LINES AND WATER SUPPLY.—An irrigation district organized under the Wright Act (Stats. 1897, p. 29) has powei under section 12 of that act to contract with a water company to issue its bonds thereto at par for the purchase of its completed pipe-lines, water-rights, and sources of supply suitable and necessary for the reception and distribution of water by the irrigation district, upon its delivery thereto of a deed conveying such property. Such issued bonds are valid in the hands of the original holder, as well as in the hands of a subsequent innocent holder.

ID.—VALIDITY OF CONTRACT FOR BONDS IN ADVANCE OF COMPLETION OF SUPPLY.—A contract for the issuance of bonds in advance of the completion of the supply does not render the contract in any proper sense a contract for construction, for which bonds must be sold under section 16 of the Wright Act, so long as no bonds were to be issued under the contract, until the irrigation district received from time to time as agreed, as consideration therefor, such completed property as it had the right to purchase for bonds at par under section 12 of the act, and a deed was required to be made of said property before the bonds were issued.

ID.—CONSTRUCTION OF ACT.—By the use of the words, "works constructed and being constructed by private owners," in section 12 of the act, the legislature clearly indicated its intention to authorize irrigation districts to negotiate for water systems in advance of their total completion.

ID.—NOMINAL DATE OF BONDS—REAL DATE—ENTIRE INSTRUMENT TO BE CONSIDERED.—The provision that the bonds shall "bear date at the time of their issuance" does not render them invalid because nominally dated at a different time from the real or legal date fixed by the terms of payment. The entire instrument is to be considered; and bonds nominally dated as signed and issued Nov. 17, 1890, are not thereby rendered invalid, where the terms of the bonds show that they did not commence to bear interest until January 1, 1891, and the coupons were made payable each six months thereafter, and the redemption of the installments principal was to be computed

from that date, which must be deemed the real legal date of the bonds, as contradistinguished from this nominal date.

Id.—Substantial Compliance with Statute.—The execution and issuance of the bonds in the form and manner appearing was a substantial compliance with the statute both as to date and term of running.

Id.—Surrender of Paid Installment Coupons of Principal—Negotiability of Bonds.—The fact that the installments of the principal were made payable only upon surrender of the coupons does not affect the negotiability of the bonds. Ordinarily a party paying a negotiable instrument is entitled to demand a surrender of the same when paid as a condition concurrent to its payment to him, and the insertion in the instrument of a stipulation for this condition which would in any event be implied cannot affect its negotiability.

APPEALS from judgments of the Superior Court of San Bernardino County and from orders denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Oscar C. Mueller, and Sidney J. Parsons, for Appellant.

Henry Goodcell, and F. A. Leonard, for Respondent.

SLOSS, J.—In each of the above entitled actions, the plaintiff seeks to recover from the Rialto Irrigation District the amount of certain interest coupons attached to bonds issued by the district. The cases were consolidated for trial, and judgment was entered in favor of the defendant in each case. Appeals are prosecuted by the plaintiff from these judgments and from orders denying his motions for a new trial. Except as to the numbers of the coupons involved, both cases present the same facts, and our discussion of the questions of law arising on these facts is applicable to both appeals.

The respondent is an irrigation district organized under the provisions of the Wright Act. (Stats. 1887, p. 29.) The coupons sued upon are held by plaintiff, who claims to have purchased them before maturity, in good faith and for value, from Semi-Tropic Land and Water Company, a corporation. The bonds to which these coupons had been attached were originally disposed of by the Rialto Irrigation District to the Semi-Tropic Land and Water Company in a manner which,

as is claimed by the respondent, and was found by the court, contravened the terms of the act authorizing the issue of such bonds. The court also found that plaintiff acquired his coupons with notice of the fact that the bonds had been disposed of in an illegal manner. The appellant contends: 1. That the bonds were so issued as to make them valid in the hands of the original holder; and 2. That even if payment of the bonds could not have been enforced by the Semi-Tropic Land and Water Company, the finding that plaintiff took with notice of any defect in the manner of their issuance is without support in the evidence. The second branch of appellant's position will not engage our attention, since we are of opinion that his first contention must be sustained.

By a vote of the electors of the district at an election held on the fifteenth day of November, 1890, the board of directors was authorized to issue bonds to the amount of five hundred thousand dollars. On December 10, 1890, a written contract was entered into between the district and the Semi-Tropic Land and Water Company for the disposal to the latter of the bonds so authorized. By this contract the Semi-Tropic Company agrees to sell and convey to the Irrigation District, by a good and sufficient deed, a continuous and perpetually flowing stream of water equal to one thousand inches, flowing from a tract of land described in the agreement. It further agrees that the pipe-lines through which the water is to be conveyed and delivered to the district shall be of certain sizes and materials, and shall be laid and constructed in a specified manner. Pipe-lines, having a conveying capacity of at least seventy-five inches each, are to be laid along certain avenues and boundary lines of the district, and the pipe-lines and system are to be completed within two years after the date of the agreement. The main pipe-line to the northern boundary of the district is to be completed, and a continuous stream of three hundred inches of water delivered through it, on or before the fifteenth day of December, 1900. Upon completion of said main pipe-line, and the delivery of said three hundred inches, the Semi-Tropic Land and Water Company agrees to execute and deliver to the Rialto Irrigation District a good and sufficient deed of grant, bargain, and sale, conveying to the district "said perpetually flowing stream of water equal to three hundred inches, . . . together with said main pipe-

line and the right of way and privileges belonging therewith or appertaining thereto, and also a perpetual right in and upon the tract of land constituting the source of supply of said water . . ." Upon the subsequent delivery of each additional one hundred inches of water, up to a total of nine hundred inches, the Semi-Tropic Company agrees to execute to the district a good and sufficient deed conveying each said stream of one hundred inches, together with any and all pipe-lines and pipe then laid and constructed, and rights of way pertaining thereto, and a perpetual right in and upon the land constituting the source of supply. Upon the completion of all the pipe-lines and system provided for in the agreement, and the delivery of the entire stream of one thousand inches, the Semi-Tropic Company agrees to execute and deliver to the district a deed conveying an estate in fee simple in and to all the sources of supply of said water, all water up to one thousand inches not previously conveyed, and all pipe, pipe-lines, rights of way, and privileges, appertaining thereto. In consideration of these covenants, the irrigation district agrees to buy and take said stream of one thousand inches, together with the lands from which said water is derived, and the pipe and pipe-lines, rights of way, and privileges used to convey and deliver said water, and to deliver to the Semi-Tropic Company therefor, bonds of the Rialto Irrigation District, to the amount of five hundred thousand dollars, to be delivered as follows: One hundred and fifty thousand dollars of said bonds, at par value, upon the construction and completion of the main pipe-line to the north boundary line of the district, the delivery there of three hundred inches of water, and the delivery of the deed thereof; fifty thousand dollars of said bonds, in addition, upon the delivery of each subsequent stream of water equal to one hundred inches and the delivery of the deed thereof, up to nine hundred inches; and the last fifty thousand dollars to be retained until sixty days after completion of the entire system and delivery of the last deed provided for. The court finds that said contract "was thereafter, by mutual agreement, modified in some particulars, but not so as to change its general scope and purpose." The Semi-Tropic Land and Water Company partly performed said contract, and, at different times conveyed to the district portions of said one thousand inches of water, and portions

of said pipe-lines as completed, and received from the district, in exchange, bonds as called for by the contract. The coupons held by plaintiff were all attached to bonds which had been so received by the Semi-Tropic Company.

The argument of respondent is that the contract provided an unauthorized and illegal method of issuing bonds of an irrigation district. Under section 16 of the Wright Act, the Board is authorized to sell bonds from time to time, to raise money for the construction of canals and works, the acquisition of property and rights, "and otherwise to fully carry out the purposes of this act." Such sale must be to the highest responsible bidder, after publication of notice of sale as prescribed in the act, and no bonds are to be sold for less than ninety per cent of their face value. Section 12 provides that "said board shall also have the right to acquire, either by purchase or condemnation, all lands and waters, and other property necessary for the construction, use, supply, maintenance, repair, and improvement of said canal or canals and works, including canals and works constructed and being constructed by private owners, lands for reservoirs, for the storage of needful waters, and all necessary appurtenances. In case of purchase the bonds of the district . . . may be used at their par value in payment." As this court said in *Hughson* v. *Crane,* 115 Cal. 404, 412, [47 Pac. 120, 121], "these are the only provisions in the act for any disposition by the directors of the bonds of the district, and it follows that the only mode in which they can exercise their power of disposing of the bonds, so that they may become valid obligations against the district, is either to exchange them for property at their par value, or to sell them for money in the open market, under the restrictions and limitations given in section 16, at not less than ninety per cent of their face value. The express provision giving to the board power to exchange them for certain property at their par value, excludes the right of the board to exchange them for any other purpose, or to dispose of them in any other manner than by the sale authorized by section 16." Applying these views to the facts before the court, it was held, in *Hughson* v. *Crane,* that the directors had no power to turn bonds over to an agent who was to sell them at not less than ninety per cent of their face value, nor to deliver bonds to a contractor, in payment for construction

work done by him for the district. Similarly, in *Stimson* v. *Allessandro Irrigation District,* 135 Cal. 389, [67 Pac. 496, 1034], it was decided that the statute did not authorize the directors of an irrigation district to make a contract with a water company whereby the district issued all of its bonds in consideration of the mere executory promise of the water company that it would in the future lease water to the district at a stipulated rent. In *Leeman* v. *Perris Irrigation District,* 140 Cal. 540, [74 Pac. 24], the doctrine of the former cases was reaffirmed. One of the bonds there involved was issued under circumstances similar to those considered in the Stimson case, and on the authority of that case, was held to be void in the hands of the original holder. Others had been exchanged by the district for warrants originally issued to pay for construction work. It was held that section 12 of the act did not authorize the directors to part with bonds in this manner. "The only express authority given to use bonds in payment for any purpose," says the court, "is in the case of the purchase of property necessary for the works. . . . There is no express authority anywhere in the act for exchanging bonds for construction work, or for exchanging bonds for warrants issued for construction work . . ."

In the case at bar it was concluded by the court below that the contract between the Semi-Tropic Land and Water Company and the Rialto District was one whereby bonds were to be issued as payment, in part at least, for construction work, and that, under the decisions just referred to, such issue was unauthorized. We think, however, that the contract is not to be construed as calling for the delivery of bonds in payment for construction work. It provides for the transfer and conveyance to the district, at different times, of specific water rights, together with completed pipe-lines and rights of way necessary to the use and enjoyment of the water-rights transferred. The bonds are, in each instance, to be issued by the district as the purchase price of the water-rights and completed pipe-lines and systems conveyed to it, and only upon delivery of a deed conveying such property. No construction work was to be done, under this contract, for the district. The purchase and laying of pipe was the affair of the Semi-Tropic Company alone, and the district did not bind itself to pay for the construction of any pipe-line by means of bonds or

otherwise. What it did agree to do was to purchase certain water-rights, together with the pipe-lines needed for the reception and distribution of the water, and to pay for such property, when ready for delivery and conveyance, with bonds. Under such contract, the district was using bonds in the manner authorized by section 12 of the act, that is to say, for the acquisition by purchase, of "lands and waters, and other property necessary for the construction, use, supply, maintenance, repair and improvement of said canal or canals and works, including canals and works constructed and being constructed by private owners, lands for reservoirs, for the storage of needful waters, and all necessary appurtenances." So long as it did not issue any bonds until it received, as consideration therefor, the property which it had a right to buy for bonds, we see no objection to a contract by which it bound itself, in the future, to take and pay for water-rights not yet developed and works not completed at the date of the contract. By the use of the words "works constructed and being constructed" the legislature clearly indicated its intention to authorize districts to negotiate for water systems in advance of their total completion. In no event was there any obligation under this agreement to accept anything but developed water-rights and completed pipe-lines, nor a duty to deliver bonds except upon transfer of such rights and lines. Each conveyance represented the right to a specific amount of water, together with such works as were necessary to make it available. Each issue of bonds was a payment for the water and pipe-lines conveyed at the time of the issue. For these reasons, we think that none of the cases relied on by respondent is applicable to the facts here presented, and that these bonds, so far as the manner of their issuance is concerned, were valid even in the hands of the original holder.

The respondent makes the further contention, that apart from the manner in which they were exchanged, the bonds are void upon their face. Section 15 of the act provides that bonds of irrigation districts shall be payable in installments as follows: At the expiration of eleven years not less than five per cent of said bonds; at the expiration of twelve years not less than six per cent; and so on, the percentage increasing by one in each year until the twentieth, when a percentage sufficient to pay off the bonds shall be paid. It is also provided

that the bonds shall "bear date at the time of their issue."
The bonds here in question contain the statement that they
have been signed and issued on the seventeenth day of Novem-
ber, 1890. Attached to each bond are two sets of coupons, one
for the interest payable semi-annually, and the other for the
installments of principal to fall due from the eleventh to the
twentieth year after the issue of the bonds. In the body of
the bond, the Rialto Irrigation District promises to pay to
bearer the sum of five hundred dollars, "at the dates and upon
installments as follows: at the expiration of eleven years
from date, five per cent of said sum; at the expiration of
twelve years from date, six per cent of said sum . . ." This
language, if it stood alone, would make the installments of
principal payable at the end of the respective periods named
from and after November 17, 1890. The bond provides,
however, that the installments are to be paid "as provided in,
and only upon the surrender of the respective installment
coupons, hereto attached." The coupons call for payment of
an installment on the first day of January, 1902, and of sub-
sequent installments on the first day of January in successive
years. Both the body of the bond and the interest coupons
make interest payable on the first days of January and July
of each year, beginning with July, 1891. It is found by the
court that the bonds were signed on or about December 21,
1890, and that none of them were disposed of or delivered
prior to December 22, 1890.

The points made by respondent are that the bonds did not
"bear date at the time of their issue," as required by the act,
and that they were made payable at periods longer than those
authorized by the statute. If November 17, 1890, is to be
taken as the date of issue of the bonds, the installments of
principal, which by the terms of the coupons become due on
January 1, 1902 and following years, are in each case made
payable at a time later by some forty-four days than the
number of years fixed in the act for the respective payments.

The power of public corporations to issue bonds is to be
exercised in the manner prescribed by statute. "There can be
no doubt that it is within the power of a state to prescribe the
form in which municipal bonds shall be executed in order to
bind the public for their payment. If not so executed they
create no legal liability." (*Anthony* v. *County of Jasper*, 101

U. S. 693.)    Where the statute has fixed the term for which bonds shall run, bonds in which payment is undertaken at the expiration of either a shorter (*People's Bank* v. *School District*, 3 N. Dak. 496, [57 N. W. 787]) or a longer term (*Norton* v. *Town of Dyersburg*, 127 U. S. 160, [8 Sup. Ct. 1111]; *Barnum* v. *Okolona*, 148 U .S. 393, [13 Sup. Ct. 638]) than that authorized are invalid.    But in determining the true effect of any written instrument, the entire writing must be considered.    Here we find that, while the nominal date of November 17, 1890, is stated in the bond, the first payment of semi-annual interest fell due on July 1, 1891.    The bonds, therefore, did not begin to bear interest until January 1, 1891, and the installments of principal were made payable in the required number of years after that date.    Under these circumstances, the bonds are to be regarded as, in effect, issued on January 1, 1891, which may be treated as their real date, in contradistinction to the nominal date of November 17th.    That the execution and issuance of the bonds in this form and manner was a substantial compliance with the statute, both as to date and term of running, is a view well sustained by authority.    (*Township of Rock Creek* v. *Strong*, 96 U. S. 271; *Dows* v. *Town of Elmwood*, 34 Fed. 114; *City of South St. Paul* v. *Lamprecht Bros. Co.*, 88 Fed. 449; *Yesler* v. *City of Seattle*, 1 Wash. St. 308, [25 Pac. 1014]; see, also, on effect of antedating bonds *Flagg* v. *City of Palmyra*, 33 Mo. 440; *State* v. *Moore*, 46 Neb. 590, [50 Am. St. Rep. 626, 65 N. W. 193].)

We think there is no merit in the point that the bonds failed to comply with the statutory requirement that they should be "negotiable in form."    The installments of principal were made payable only upon surrender of the coupons, and it is urged that this imports into the promise of the maker a "condition not certain of fulfillment," and so, under section 3088 of the Civil Code, destroys the negotiable character of the instrument.    But, ordinarily, a party paying a negotiable instrument is entitled to demand its surrender as a condition concurrent to its payment by him (Civ. Code, sec. 3137), and the insertion in the instrument of a stipulation for this condition, which would in any event be implied, does not affect its negotiability.    (*Humboldt Township* v. *Long*, 92 U. S. 642; *Frank* v. *Wessels*, 64 N. Y. 155.)

For these reasons, the following order will be made in each of the cases under consideration. The judgment and the order appealed from are reversed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.