[L. A. No. 7866.  In Bank.—September 26, 1927.]

## N. W. STOWELL Appellant, v. RIALTO IRRIGATION DISTRICT (a Corporation), Respondent.

[1] IRRIGATION DISTRICTS—BONDS—CONSIDERATION FOR TRANSFER.— Where an irrigation district entered into an agreement with a land and water company to issue and deliver to the latter all of a certain issue of its bonds as a consideration for certain waters and a distributing system, said land and water company having theretofore entered into an agreement with a pipe company wherein the latter agreed to furnish a good and serviceable pipe and lay the same in ditches to be constructed by the former, the facts show a legal consideration for the issuance of said bonds to the land and water company for delivery to the pipe company, where it appears without conflict that the issuance and delivery of the bonds were authorized to be made in an amount sufficient to pay for the pipe already laid, upon the condition of the receipt of a deed conveying to the district all pipe and pipe-lines and rights of way owned by the land and water company in the district's distributing system, as a transfer of the bonds was in consideration of the property conveyed to the district, which was authorized by section 12 of the Irrigation District Act.

[2] ID.—DELIVERY OF DEED—DELAY—PART OF ONE TRANSACTION.— The contention in such case that the deed to the district should not be considered as a consideration for the bonds because it was delivered and recorded some ten days after the delivery of the bonds to the pipe company cannot be maintained, where it is plainly shown that the execution of the deed was but a culmination of all the prior transactions, and it further appears that ever since the delivery of the deed the district has been in full enjoyment of the title and possession of the property thereby conveyed.

[3] ID.—VALUE OF PROPERTY CONVEYED.—In an action to recover on interest coupons of such bonds, the contention cannot be maintained that the property conveyed was not of the value of the bonds, it not appearing what the value of the property was to the district; and even if the district made a bad bargain this fact would be no defense under the circumstances.

[4] ID.—TRANSFER OF PIPE AND RIGHT OF WAY.—In such a case, where the resolution of the board of directors of the irrigation district authorizing the transfer of the bonds, upon certain conditions, provided that the pipe company should join in executing the deed transferring the pipe, pipe-line, and rights of way to the

3.  See 26 Cal. Jur. 434.

district, the fact that it did not join in the deed is immaterial, as whatever interest it had in the pipe passed to the land and water company upon the laying thereof.

[5] ID.—DILIGENCE IN COMPLETING CONTRACT—FAILURE TO SHOW DEFAULT.—Where the resolution of the board of directors of the irrigation district provided in such a case for the delivery of the bonds only on condition that the pipe company should diligently continue the laying of pipe-lines to completion in accordance with its contract with the land and water company, in the absence of a showing that there was a default of some sort, this condition of the resolution cannot be urged to defeat the consideration for the deed, especially where the district has accepted it and obtained the benefits thereof.

(1) 40 Cyc., p. 822, n. 32.    (3) 40 Cyc., p. 823, n. 44.

APPEAL from a judgment of the Superior Court of San Bernardino County. J. W. Curtis, Judge. Reversed.

The facts are stated in the opinion of the court.

Swanwick & Donnelly and Carroll Searls, for Appellant.

Leonard, Surr & Hellyer for Respondent.

SHENK, J.—A former judgment of reversal in this case was set aside on petition for rehearing in order that further consideration might be given to the contentions of the defendant. Upon such further consideration we are unable to arrive at a different conclusion.

Two actions were brought by plaintiff based on amounts claimed to be due on interest coupons detached from certain bonds of the defendant Irrigation District. The defense was made on the ground that the issuance of said bonds was unauthorized by law; that the consideration, if any, for the issuance thereof was insufficient, inadequate, and unlawful in that said consideration consisted in the doing of construction work for the District in violation of section 12 of the Irrigation District Act (Stats. 1887, p. 29); that the plaintiff was not a holder of said bonds in good faith, or in ordinary course of business without notice of the facts constituting the alleged invalidity, and that payment of certain of said coupons was barred by the statute of limitations. The two cases were tried together by agreement of the

parties and a single record is now presented. The court found for the plaintiff on all of said coupons excepting those barred by the statute of limitations and excepting also the coupons detached from fifty-four bonds of the par value of $27,000. As to these fifty-four bonds the court found that the issuance thereof was unauthorized and void under the statute and that the plaintiff, at the time he acquired the same, had notice and knowledge of such invalidity. The plaintiff appeals from that portion of the judgment which denies recovery on the coupons attached to the fifty-four bonds.

The record is presented in a bill of exceptions wherein it is the sole claim of the plaintiff that the evidence is insufficient to justify the findings of the court adverse to his present contentions.

The Rialto Irrigation District was organized on October 13, 1890, pursuant to provisions of said Irrigation District Act as originally enacted and as subsequently amended and supplemented. As the result of an election held for that purpose on November 15, 1890, bonds of the District in the total sum of $500,000 were authorized. On December 10, 1890, the District entered into an agreement with the Semi-Tropic Land and Water Company wherein the District agreed to issue and deliver to the Semi-Tropic Company all of said bonds as consideration for one thousand inches of water and a distributing system. Before the covenants of this contract had been fully performed by the Semi-Tropic Company and under date of December 22, 1890, another agreement was entered into between the same parties modifying the agreement of December 10, 1890, in minor particulars. Again, on May 26, 1892, the same parties executed another agreement modifying the previous contracts and confirming the same as modified. The contract of December 10, 1890, was involved in a former appeal in this case (*Stowell* v. *Rialto Irr. Dist.*, 155 Cal. 215 [100 Pac. 248]). It was there held that the bonds issued pursuant to the 1890 contract were, in fact, given as payment for water and pipe-lines purchased and were valid in the hands of the original holder. Under date of June 12, 1893, the District and the Semi-Tropic Company entered into an agreement formally abrogating and canceling the previous agreements in so far as they remained unexecuted. The new contract specified

that the Semi-Tropic Company should transfer to the District certain water and water rights and complete the distributing system as therein provided; that if the Semi-Tropic Company should fail to perform its covenants under the contract the District could, on thirty days' notice, in writing, perform the contract and charge the cost thereof to the Semi-Tropic Company; that if said company should perform its contract, as agreed, then the District would turn over the balance of said $500,000 issue of bonds to the company; that all questions arising between the parties as to the sufficiency of the pipe-lines to be constructed or as to the measurements of water should be submitted to a board of arbitrators, consisting of three competent engineers, one to be appointed by the District, one by the Semi-Tropic Company, and the third by the two so chosen, and the determination of the board was to be final and conclusive; that the remaining bonds of the $500,000 issue be forthwith deposited with W. S. Hooper, cashier of the San Bernardino National Bank, as trustee, for said parties, the same to be held by him in accordance with the terms of said agreement and be delivered to the Semi-Tropic Company on the order of the boards of directors of the respective parties. Three days after the contract was made, to wit, on June 15, 1893, Mr. Hooper received 314 of said bonds. Subsequently on orders he delivered the fifty-four bonds in question to the plaintiff. These fifty-four bonds were delivered to the plaintiff on October 8, 1894, under circumstances hereinafter to be related.

On June 4, 1892, the Semi-Tropic Land and Water Company entered into an agreement with the Stowell Cement Pipe Company, wherein the latter company agreed to furnish a good and serviceable pipe of cement concrete of specified size, dimensions, and price, and lay the same in ditches to be constructed by the Semi-Tropic Company, for which the latter agreed to pay the Stowell Company sixty per cent of the contract price when the pipe was made and forty per cent when the pipe was laid. Considerable work was done under this contract for which the Stowell Company accepted as payment bonds of the District at par in the hands of the Semi-Tropic Company in lieu of cash, as provided in said contract. In the month of February, 1894, W. M. Sheldon was appointed receiver of the Semi-Tropic

Company in an action entitled "*San Francisco Savings Union* v. *Semi-Tropic Land and Water Company*," pending in the superior court in and for San Bernardino County. On August 16, 1894, the board of directors of the District adopted the following resolution:

"That on order of the president and secretary of this Board, W. S. Hooper be and he is hereby authorized to deliver to W. M. Sheldon, receiver of the Semi-Tropic Land and Water Company such an amount of the bonds of this district as a committee to be appointed may determine, said bonds to be delivered by said Sheldon to Stowell Cement Pipe Co. as payment for pipe already laid in this district and accepted.

"Provided that this district shall receive a good and sufficient deed and title to all pipe-lines in and out of the district (not already deeded), laid by said Stowell Cement Pipe Co., for the use and benefit of this district. Said W. M. Sheldon, receiver, and said Stowell Cement Co. shall join in executing said deed; and provided further that this district shall receive a perfect deed and title to rights of way for all pipe-lines already laid, or that may be laid for the use and benefit of this district through the lands of the Semi-Tropic Land and Water Company, and all rights of way now owned by them.  And be it further resolved that W. M. Sheldon, receiver, be requested to continue to completion the contract existing between the Semi-Tropic Land and Water Company and Stowell Cement Company, for the laying of pipe-lines for the use of this district.  And be it further resolved that on the order of the president and secretary of this board, W. S. Hooper be and he is hereby authorized to deliver the bonds of this district to W. M. Sheldon, receiver, to be by him turned over to the Stowell Cement Co. in amounts at par value and at times as this board shall direct.  This resolution shall be operative only on condition that the Stowell Cement Co. shall diligently continue the laying of pipe-lines in this district to completion, as per their contract with the Semi-Tropic Land and Water Company."

The minutes of the District of date June 5, 1894, disclose the following:

"N. W. Stowell of the Stowell Cement Pipe Company made a statement of the account between the Semi-Tropic

Land and Water Company and the Stowell Cement Pipe
Company and asked for a settlement with the District.
On motion a committee consisting of Robinson, Dyer and
Hunton were appointed a committee to investigate on the
matter and report back to the board.''

The minutes of the District of October 6, 1894, include
the following:

''The committee appointed to investigate the Stowell
Cement Pipe Company's account reported that they found
the count correct, and on motion were discharged. The fol-
lowing resolution was read: Resolved, that on order of the
President and Secretary, W. S. Hooper be and he is hereby
authorized to deliver to W. M. Sheldon, receiver of the
Semi-Tropic Land and Water Company, the bonds of the
District in the amount of $27,000 at par value, detaching
all coupons . . . '' then overdue. On October 4, 1894, the
receiver of the Semi-Tropic Company filed in said superior
court a petition wherein he alleged the indebtedness of the
Semi-Tropic Company to the plaintiff in said action in the
sum of $280,000 secured by a mortgage on 16,700 acres of
land belonging to the Semi-Tropic Company, 7,000 acres of
which were situated within the boundaries of the Irrigation
District; that the Semi-Tropic Company was unable for
want of money to comply with its contract of June 12, 1893,
with the District or to insist upon compliance by the Stow-
ell Company under said contract of June 4, 1892; that the
District was desirous of having further pipe furnished and
laid by the Stowell Company to the end that all the lands
within the District might be furnished with conduits and
pipes for conducting water to the lands of the District
and was desirous of availing itself of the terms of the con-
tract between the Semi-Tropic Company and the Stowell
Company for the furnishing and laying of pipe and thus
avoid advertisement for bids and consequent delays; that
the additional work would be of the value of $15,000 and
that the District desired to furnish bonds of the District at
par in payment thereof to the receiver, the same to be
delivered to the Stowell Company in payment for said
work; that both the District and the Stowell Company and
the receiver were willing to relieve the Semi-Tropic Com-
pany of all responsibilities under the latter's contracts; that
it would be greatly to the interest of the Semi-Tropic Com-

pany and its general creditors to have the lands included within said District, and particularly about 1,840 acres of said Semi-Tropic Company's lands still unpiped, piped for water by the Stowell Company; that the Stowell Company would not furnish or lay pipe thereon without the delivery of bonds unto it through the receiver; that the receiver desired to convey to the District all of the right, title, and interest of the Semi-Tropic Company in and to all of the pipe and pipe-lines situate within the District, and that these pipe and pipe-lines had been made and laid for the sole use and benefit of the District; that the receiver desired to convey to the District all of the right, title, and interest of the Semi-Tropic Company in and to the Raynor Ditch and Flume, which were acquired by the Semi-Tropic Company solely for the benefit of the District and which were and are not subject to the lien of said mortgage; that in October, 1890, the District purchased from the Semi-Tropic Company certain water and tunnel rights in the Lord ranch; that the District has water which it desires to discharge through the aforesaid pipes for the irrigation of lands owned by the Semi-Tropic Company; that the District is willing to maintain and care for said pipes and conduits at its own expense after the same have been conveyed to it and to accept a conveyance to it of the said pipe and pipe-lines and said interest in the Lord ranch; that the District is cognizant of said petition and is willing to relieve the Semi-Tropic Company and the receiver of all liability in the premises, and that the Stowell Company is cognizant of the petition and consents thereto and is likewise willing to relieve the Semi-Tropic Company of all liability upon the granting of said petition. The receiver prayed for an order authorizing him "to make the conveyances hereinbefore particularly mentioned" and to transfer to the Stowell Company whatever bonds he may receive from the District "in payment for the pipe and the laying of piping within and upon the lands of said" District by the Stowell Company and for such other relief as might be deemed proper in the premises. On the day after the foregoing petition of the receiver was filed, to wit, on October 5, 1894, the court made an order reciting that the statements in the petition were true and ordering that the receiver transfer to the Stowell Company whatever bonds he may receive from the District "in pay-

ment for piping and the laying of pipe within and upon the lands of said Rialto Irrigation District by said Stowell Cement Pipe Co.'' The order further authorized the receiver to convey to the District, by good and sufficient deed, all of the right, title, and interest of the Semi-Tropic Company in and to the pipe and pipe-lines situated within the boundaries of the District or leading from the water sources thereto and all of the right, title, and interest of the Semi-Tropic Company in and to the Raynor ditch and flume and the Lord ranch.

Thereafter and on October 8, 1894, the president and secretary of said District, pursuant to a resolution of the board of directors adopted on the same day, authorized W. S. Hooper to deliver to said receiver bonds of said District then in his possession under the contract of June 12, 1893, in the amount of $27,000 par value. These bonds were on the same day delivered to the plaintiff in this action, who concededly was the directing head and dominating spirit of the Stowell Company. On the eighteenth day of October, 1894, the receiver, on behalf of the Semi-Tropic Company, signed a deed conveying to the District the pipe, pipe-lines, easements, and other real property authorized to be conveyed by order of court of October 5, 1894. This document was duly acknowledged and was later recorded at the request of the District. The contract of June 12, 1893, was assigned to Mr. Stowell on November 9, 1894, who thereafter, on January 2, 1895, entered into an agreement with the District modifying said contract in certain particulars and entering upon new and additional covenants and agreements with the District to furnish material and do construction work. For aught that appears in the record Stowell was not remiss in the execution of his part of the contract, as modified and re-executed. However, it was determined in *Rialto Irr. Dist.* v. *Stowell,* 246 Fed. 294, that a large number of the bonds of the District issued to Stowell under the contract of January 2, 1895, were issued for construction work and were, therefore, void in his hands under the inhibitions of the statute. When the contract of January 2, 1895, was executed, a settlement on account of pipe theretofore made and laid was had between the plaintiff and the District, in which the $27,000 in bonds involved herein

was taken into account as an item of payment from the receiver of the Semi-Tropic Company to the plaintiff.

[1]    The principal problem presented for solution in this case is whether there was a lawful consideration for the fifty-four bonds running from the Semi-Tropic Company to the District. Section 12 of the Irrigation District Act prohibits the issuance of bonds except for cash or property purchased. The trial court concluded that the bonds in question were issued in payment of work done under the contract which had been abrogated and canceled by agreement of June 12, 1893, and were, therefore, void under section 12 of the act, as being founded upon an illegal or unauthorized consideration. The only conflict in the evidence is as to whether plaintiff's claim arose for work done prior to June 12, 1893, or subsequent thereto. The trial court found, on what is assumed to be sufficient evidence, that the claim arose for work done by the Stowell Company prior to June 12, 1893, and was, therefore, for work done under a contract that was not in existence at the time of the delivery of the fifty-four bonds. It is very clear from the record that the Stowell Company furnished the material and performed the work, amounting to and somewhat exceeding in value the par value of the $27,000 in bonds received by it, and that the work was done and the material was furnished prior to the time the Stowell Company, the predecessor of the plaintiff, received the bonds from the receiver of the Semi-Tropic Company, which was, of course, the same as receiving the bonds from the company itself. There was no statutory or other impediment restricting the right of the Semi-Tropic Company to contract with the Stowell Company for payment for work done and materials furnished in bonds of the District which the Semi-Tropic Company might rightfully have in its possession. So all question of a valid and sufficient consideration for the transfer of the bonds to the Stowell Company by the Semi-Tropic Company or its receiver may be dismissed as having been fully shown in plaintiff's favor. As to the consideration flowing from the Semi-Tropic Company to the District, it is deemed of no controlling significance whether the plaintiff's claim against the Semi-Tropic Company arose before or after June 12, 1893. A legal consideration for the issuance of said bonds is shown by what transpired on and shortly prior to Octo-

ber 18, 1894. It appears from the evidence, without con-
flict, that on June 5, 1894, Mr. Stowell appeared before the
board of directors of the District and made a statement of
his account with the Semi-Tropic Company and asked for a
settlement so that he might receive payment from that com-
pany. Obviously he could not demand settlement with him-
self directly from the District for the reason that there was
then no contractual relation between himself and the Dis-
trict. His claim was against the Semi-Tropic Company.
As a result of his appearance before the board, a committee
was appointed by the board, consisting of three of its mem-
bers, "to investigate on the matter and report back to the
board." The resolution of the board of date August 16,
1894, authorizing W. S. Hooper, on the order of the presi-
dent and secretary of the board, to deliver to the receiver
of the Semi-Tropic Company bonds in an amount to be
determined after the report of the committee appointed to
ascertain the amount of pipe already laid by the Stowell
Company and unpaid for, upon condition of the receipt of
a deed conveying to the District all pipe and pipe-lines and
rights of way owned by the Semi-Tropic Company in the
District's distributing system; the petition of the receiver
of October 4, 1894, for leave of court to make the deed re-
quired by the District under said resolution and including
the Raynor ditch and flume and the Lord ranch; the grant-
ing of the petition on October 5th; the report of the com-
mittee of the District board of October 6th, certifying to
the board the correctness of the Stowell Company's pipe
and working account and the resolution of said board on
the same day authorizing Mr. Hooper to deliver to the re-
ceiver the $27,000 in bonds, which was less in amount than
the Semi-Tropic Company owed the Stowell Company for
pipe already laid; the delivery of said bonds to the plain-
tiff for the account of the Stowell Company on the order of
the District and of the receiver of the Semi-Tropic Com-
pany on October 8th, and the execution of the deed by said
receiver to the District of date October 18, 1894,—all con-
stitute a part of the same transaction wherein the bonds
were transferred to the receiver in consideration of the prop-
erty conveyed by said deed, a transaction authorized by
section 12 of the Irrigation District Act. It is, therefore,
apparent that there was a legal consideration for said bonds

in the hands of the original holder, namely, the Semi-Tropic Company, or its receiver, regardless of the nature of the contract of December 10, 1890, as modified, or the contract of June 12, 1893. [2] The defendant District urges that the deed of October 18, 1894, should not be considered a part of the same transaction or as consideration for said bonds, because it was delivered to the District and recorded some ten days after the delivery of the bonds to Mr. Stowell. The contention is without substantial merit, as the record plainly shows that the execution of the deed was but a culmination of all the prior transactions. It may properly be argued that it would have been better if the officers of the District had required the delivery of said deed before the bonds were delivered, as the resolution of the board plainly contemplated, but there was no difficulty in identifying the deed to be received or the bonds to be delivered therefor. Ever since delivery of the said deed the District has been in full enjoyment of the title and possession of the property thereby conveyed. [3] The defendant contends that the record shows that the property thereby conveyed was not of the value of said bonds; especially is it urged that the petition of the receiver for leave to convey the same discloses that said property was of very little value to the Semi-Tropic Company and of no market value. Even so, the value of said property to the District may have been all that the directors of the District plainly considered it was worth when they authorized the $27,000 in bonds to be delivered in exchange for the same. The record does not show what the value of the property thereby conveyed was to the District. The District may have made a bad bargain. That fact, if it be a fact, would be no defense under the circumstances here shown. (*Ham* v. *Grapeland District,* 172 Cal. 611, 618 [158 Pac. 207].)

[4] The defendant makes the further point that the resolution of the board of date August 16, 1894, provided that the Stowell Company should join in executing the deed, and that it did not do so. No reason is advanced why that company should have so joined in order effectively to pass the title. Whatever interest the Stowell Company had in the pipe passed to the Semi-Tropic Company upon the laying thereof and such was no doubt taken into consideration by

the officers of the District when they accepted and recorded the deed.

[5] It is also insisted by the defendant that the resolution of August 16th provided that it would be operative only on condition that the Stowell Company should diligently continue the laying of pipe-lines in said District to completion in accordance with its contract with the Semi-Tropic Company. The answer to this contention is that the record does not disclose any breach of said contract by the Stowell Company or by Stowell himself after the contract of June 12, 1893, was assigned to him. Without a showing that there was a default of some sort, we are not justified in permitting the inclusion of the condition in the resolution to defeat the consideration for the deed, especially where, as it now appears, the District has accepted the deed and is retaining the benefits thereof.

The determination that said bonds were valid in the hands of the original holder renders it unnecessary to pass upon the further contention of the defendant that the plaintiff is not a *bona fide* holder without notice.

Since the findings of the trial court to the effect that the consideration for the issuance of said fifty-four bonds was illegal is without support under the uncontradicted evidence, the judgment must be reversed, and it is so ordered.

Waste, C. J., Seawell, J., Richards, J., Preston, J., and Langdon, J., concurred.